Mr. Justice G-RIER
 

 delivered the opinion of the court.
 

 The-libel in this case sets forth a contract between the owners of certain steamboats, of which the Yankee Blade was on@¿ -
 
 *89
 
 to convey freight and passengers between ÍTew York and California. : Among other things, it was agreed that the America shonld proceed to Panatfia, and the Yankee Blade, should leave Yew York at such time as to, connect with the America. The owner of the Yankee Blade refused to employ his vessel according to this agreement, and sent her to the Pacific under a contract with other persons. Eor this breach of contract the libellant demands damages,, assuming that the vessel is subject, under the maritime law, to a lien which may be enforced
 
 in1 rem
 
 in a court of admiralty.
 

 The Circuit Court dismissed the libel, being of opinion “that the-instrument íb of a description unknown to the maritime .law; that it contains no express hypothecation of the-vessel, and the law does not imply one.”
 

 . In support ■ of his allegation of error in. this decree, the learned counsel for the appellant has endeavored to establish the following proposition:
 

 “Agreements for carrying passengers are maritime con-, tracts, pertaining exclusively to the business''of commerce and navigation, and consequently may be enforced specifically against the vessel by courts of admiralty proceeding
 
 in rem."
 

 Assuming, for the present, the premises of this proposition to be true, let us inquire whether the conclusion is a. legitimate consequencé therefrom.
 

 The maritime “privilege” or lien is adopted from the civil law, and imports a tacit hypothecation of the subject of it. It is. a
 
 “jus in
 
 re,” without actual possession or any right of possession. It accompanies the property into the hands of a bona fide purchaser. It can be executed and divésted only by a proceeding
 
 in rem.
 
 This sort of proceeding against personal property is unknown to the common law, and is peculiar to the process of courts of admiralty. The foreign and other attachments of property in the State courts, though by analogy loosely termed proceedings
 
 in rem,
 
 are evidently not within the category.- But this privilege or lien, though adhering to the vessel, is a secret one;’'it may operate to the prejudice of general creditors and purchasers without notice; it is therefore
 
 “siricti juris,”
 
 and cannot' be extended by construction, analofy,-or inference. ^Analogy,” says Pardessus, (Droit Civ., vol. 3, 597,) “ cannot afford a decisive argument, because privileges are of
 
 strict right.
 
 They are an exception to the rule by which all creditors have equal rights in the property’of their debtor, and an exception should be declared and described in express words-; we cannot arrive at it by reasoning from one case to another.”
 

 These principles will be found stated, and fully vindicated
 
 *90
 

 ■
 
 by authority, in the cases of The Young Mechanic, 2 Curtis, 404, and Kiersage, Ibid., 421; see also Harmer
 
 v.
 
 Bell, 22 E. L. and E., 62.
 

 ■How, it 'is a doctrine not to be, found in any treatise on maritime law, that every contract- by the owner or master of a vessel, for the future employment of it, hypothecates the vessel for its performance. , This lifen or privilege is founded on the rule of maritime law as stated by Cleirac,- (59T:) “Le batel est obligée á la marchandise et' la marchandise au batel.” The obligation is mutual and reciprocal. The merchandise is bound or hypothecated' to the vessel for. freight and charges, (unless released by the covenants of the charter-party,) and the vessel to the cargo. The bill, of lading usually sets forth the terms of the contract, and shows the duty, assumed by the vessel. Where there is a charter-party, its covenants will define the duties imposed on the ship. Hence it is said, (1 Valin, Ordon. de Mar., b. 3, tit. 1, art. 11,) that “the ship, with' her tackle, the freight, and the cargo, are respectively bound (affeetée) by the covenants of the charter-party.” But this duty of the vessel, to the performance of which the law binds her by hypothecation, is to- deliver the cargo at the time and place stipulated in the bill of lading or, charter-party, without injury or deterioration..
 
 If
 
 the cargo be hot placed on board, • it is, not' bound to the vessel, and the vessel cannot be in de- ' fault for the. non-dejivery, in good order, of goods never received on board. ’Consequently, if the master or owner re-fuses to, perform his contract, or for any other reason the ship ’ does nqt receive cargo and depart on her voyage according to contract, the charterer has no privilege or- maritime lien on the ship for such breach of the contract by the owners, but must resort to his personal action for damages, as in other cases.
 

 See 2 Boulay, Paty Droit Com. and Mar., 299, where it is said!,, “Hors ees deux cas, (viz: default in delivery' of the foods, or.dainages for deterioration,) il.n’y a-pas. de privilege pretendre .de la- part ■ du marchand ehargeur; qar si les dom- . mages et intérets n’ont liéu que pour refiis de depart du ' navire, pour- depart tardif ou precipité, pour saisie du navire ou autreinent il est evident que^a cet egard la créance est simple et. ordinaire, sans aucune sorte de privilege.”
 

 Thus, in the case of the City of London, (1 W. Robinson, 89,) it was decided that a mariner who had been discharged from á vessel after articles had been signed, .might proceed in the admiralty ip. a suit for wages, the voyage for which he was. engaged having,been prosecuted; but if the intended voyage be altogether abandoned by the owner, the seaman must seek, 'his remedy at common low by action on the case. . '
 

 
 *91
 
 And this 'court has decided, in the case of The Schooner Freeman
 
 v.
 
 Buckingham, 18 Howard, 188, “that the law creates, no lien on-.a vessel as a security for the performance of a contract to transport cargo, until some lawful contract of affreightment is made, and a caigo shipped under it.”
 

 How, the damages claimed by the libellant, in this case, are not for the non-deliveiy of merchandise or cargo at the. time and place according to the covenants of a charter-party, or for their injury or deterioration on the voyage, hut for a refusal of the owners to employ the vessel in carrying passengers and freight from Hew York, so as to connect with the America when she should arrive at Panama. The owners have not made it a part of their agreement that their respective vessels should he mutually hypothecated as security for the performance of their agreement; and, as we have shown, there is no tacit hypothecation, privilege, or lien, given .by the maritime law.
 

 . "We have examined this case from this point of view, because the libel seems to take it for granted that, every breach of contract, where the subject-matter is a ship employed in navigating the ocean, gives a privilege or lien on the vessel for the damages consequent thereon, and because it was as-. sumed in the argument, that if -this contract was in the nature' of a charter-party, or had some features of a charter-party, the court would extend the maritime lien by analogy or inference,' for the sake of giving the libellant this remedy, and sustaining-our jurisdiction. But we have shown this conclusion is not a correct inference from the, premises, and that this lien, being
 
 stricti juris,
 
 will not he extended by construction. It is, moreover, abundantly evident that this contract has none of the features of a charter-party. A charter-party is defined to be a contract by which an entire ship, or some principal part thereof, is let to a merchant for the conveyance of goods on a ' determined voyage to one or more places. (Abbott on Ship., 241.)
 

 How, by this agreement, the libellant has not hired the Yankee Blade, or -any portion Of the vessel; nor have the' master or owners of the ship covenanted to convey any merchandise for the libellant, nor has he agreed to furnish them ány. But the agent for the Yankee Blade “ agrees that when the. America arrives at Panama, the Yankee Blade shall leave Hew York, conveying passengers and freight,” which were afterwards to be received by the America, and transported to San Francisco; and the passage money.and freight earned ■was to be divided between them — 25 per cent, to the Yankee Blade, and_75 to the America. '
 

 
 *92
 
 This is nothing more than an agreement for a special and limited- partnership in the business of transporting freight .and .passengers between blew York and San Francisco, and the mere' met that the transportation is by sea, and not by land, will not be sufficient to give '.the court of admiralty jurisdiction of an action for a breach of the contract. It is not one of those to which the peculiar principles or remedies given by the maritime-law have any special application, and is the fit subject for the jurisdiction of the common-law courts.
 

 ' The decree of the Circuit Court is therefore affirmed;.