## Case No. 11,736.

### The R. G. WINSLOW.

[4 Biss. 13;[1] 3 West. Law Month. 78.]

District Court, D. Wisconsin. Dec. Term, 1860.

WAREHOUSEMAN— DELIVERY OF WHEAT TO VESSEL
—PARTING OF ELEVATOR PIPE — LOSS.

1. In delivering wheat from a warehouse through a pipe into a vessel, the duty of the warehouseman is complete, and his liability ended, with the discharge of the wheat into the pipe.

2. The duties of the master extend to all that relates to the loading of the cargo, and the vessel is liable for his faithful performance. It is his business to arrange the pipe and trim the vessel.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

3. For any wheat lost by the careening of the vessel and consequent parting of the pipe, the vessel is liable.

[Cited in The Pauline, Case No. 10,848; Scott v. The Ira Chaffee, 2 Fed. 406.]

This was a libel filed by Daniel Newhall against the bark R. G. Winslow for the loss of seven hundred bushels of wheat while being discharged from a warehouse into the vessel. The loading commenced about twelve o'clock on the morning of the third of October, 1859, the wheat being weighed by the shipper, in the cupola of the warehouse, in one hundred bushel drafts, which were tallied by the first mate, there present. It was then passed from the warehouse to the vessel through a pipe of heavy boiler wrought iron. The pipe was about sixteen feet long, and ten inches in diameter. The warehouseman fastened one end of the pipe to the warehouse, and placed the other on the deck of the vessel, to be regulated, watched and shifted by the second mate. After the delivery of about five thousand bushels of the wheat the vessel careened, and the pipe parted. In consequence of this accident, about seven hundred bushels of wheat went, partly on the deck of the vessel, and partly on the dock, and were lost in the river. Both the master and the second mate were asleep below at the time of the accident.

Emmons & Van Dyke, for libellant.
Finches, Lynde & Miller, for respondent.

MILLER, District Judge. If the mate who had charge of the pipe had been vigilant in watching the discharge of wheat from the pipe, but a small quantity of one draft would have been lost, for by a word from him to the persons in the cupola, the flow of wheat could have been instantly shut off; and it was his duty to give the order.

I do not think it material to inquire how much the vessel careened, or whether the pipe broke or parted at the joint, or whether the careening of the vessel caused the parting of the pipe, or whether the parting of the pipe was at a place over the deck of the vessel or over the dock. The mate on board, who had charge of the pipe, and of the discharge of the wheat from the pipe into the hold of the vessel, neglected his duty, and allowed seven drafts of one hundred bushels of wheat to be lost. In respect to the loading and carriage of the goods, the master is chargeable with the most exact diligence. His responsibility with respect to them begins where that of the wharfinger ends, and when they are delivered to some accredited person on board the ship. If he receives them at the quay, or beach, or sends his boat for them, his responsibility attaches from the moment of the receipt. Not only is the master responsible with respect to the safety and security of the goods, but the vessel is also liable. It stands as the shipper's security, and is, by the maritime law, hypothecated to him for his indemnity. The duties of the

master as carrier extend to all that relates to the loading, transportation, and delivery of the goods. And for the faithful performance of those duties the ship stands pledged, as well as the master and the owners personally. Fland. Shipp. § 189. And the manner of taking goods on board, and the commencement of the master's duty in this respect, depends on the custom of the particular place. More or less is to be done by the wharfingers or lightermen, according to the usage. Abb. Shipp. 345. The master of the vessel knew that the wheat was to be delivered on board through the pipe; and he also knew the manner of weighing and discharging the grain from the hopper, when he made the contract; and with such knowledge he had the first mate placed in the cupola, to tally the drafts, and the second mate stationed on deck to watch the discharge of the wheat from the pipe into the hold of the vessel, and to keep the vessel trimmed; and the work had commenced before he turned in. It is not the business of the officer in charge of the receiving of wheat from a warehouse through a pipe, to permit any person not belonging to the vessel, nor under his command, on board, to shift the pipe, or to trim the vessel. This is as much the business of the vessel, as weighing the wheat is of the warehouseman. The parties proceeded to put the wheat on board, according to the usual manner of loading vessels with grain from warehouses.

The pipe is attached to the warehouse, and it is used jointly by the warehouse and the vessel. The vessel controls the discharge of the wheat from the warehouse through the pipe. The order to discharge or to stop, is given from the vessel; and the wheat is weighed by the warehouseman, and the drafts are tallied by the first mate before discharged from the hopper. Using the pipe in loading the vessel was necessary, in the performance of the contract made by the master with the shipper, for which the owners were to receive compensation in the freight earned by the vessel. Unless the wheat was transported, freight would not be earned; and it could not be transported unless a pipe was used in its delivery on board. The master might have supplied a pipe; and with the consent of the owner of the warehouse, he might have attached it to the warehouse and used it. But there can be no difference in law, whether he used the pipe of the warehouse or his own pipe. He had the sole control of the warehouse pipe, and made it the pipe of the vessel pro hac vice. De Mott v. Laraway, 14 Wend. 225. I am satisfied that the duty of the warehouseman ended with the tally of the drafts by the mate, and the discharge of the wheat from the warehouse into the outside pipe, and that the duty of the master then commenced. At that moment the delivery of the wheat was complete, and the liability of the vessel attached. The ship-

per had then fully parted with the possession; and having no longer any control, or right of control, over the wheat, he was in no degree responsible for its actual delivery on board. Upon the same principle it was ruled, in the case of The Edwin [Case No. 4,300], that the vessel was liable for the non-delivery of bales of cotton according to contract, which were lost before reaching the vessel, in consequence of the explosion of the boiler of a lighter, in which the cotton was being carried from the cotton press to the vessel, in the possession of the master of the vessel.

This case is different from a contract merely executory, where there has been no delivery of the goods to the master, nor change of possession, nor effort to deliver. When there is no delivery of the goods, the contract of the master for their transportation creates no lien. Buckingham v. The Freeman, 18 How. [59 U. S.] 182. There the bill of lading of goods not shipped was designed as an instrument of fraud. And in Vandewater v. Mills, 19 How. [60 U. S.] 82, where there was a contract for the future employment of the vessel. And in Hannah v. The Carrington [Case No. 6,029], where the ship was withdrawn from the trade, and refused further to comply with a contract of affreightment. And in The Joseph Grant [Case No. 7,538] it was decided that the master has no authority as such to sign a bill of lading in blank, and that the libellant as assignee of the bill of lading, filled up after the vessel sailed, acquired no lien on the vessel. The cargo on board at the time corresponded with the bill of lading as filled up, but it was delivered to a different consignee, according to the bill of lading correctly given by the master before the vessel sailed.

The cases here referred to are wanting in the essential particular of delivery to the vessel to make them precedents governing the case under consideration. The wheat lost by the negligence of the mate, was delivered to the vessel as a portion of the twenty thousand bushels contracted to be received on board and transported to Buffalo; and the libellant should have a decree for its value.

NOTE. The delivery of cotton on a lighter, employed by the owner of the vessel, is a delivery to the vessel, and the responsibility of the owners as common carriers attaches. The Edwin Naumkeag Steam Cotton Co. [Case No. 4,301]. Delivery to a carrier should be according to the usage of his business, and actual or constructive; and the delivery is complete if the master, mate, or other agent of the owner, receive them either at the ship, or on the wharf, or in a warehouse, according to the usage. 2 Pars. Cont. 175–177; Ball v. New Jersey Steamboat Co., 1 Daly, 491; Ang. Carr. §§ 131–134.