Bbown, D. J.
Upon the argument of this case I was satisfied, from the correspondence of the parties, that a legal contract of affreightment had been made, but that nothing had ever been done by the propeller toward its execution. The boiler was never laden upon the propeller, nor delivered to any one having authority to receive it on her behalf. The question of jurisdiction was reserved.
There is an abundance of dicta to the effect that the obligation of the cargo to the ship, and of the ship to the cargo, does not arise until the cargo or some portion of it has been laden on board, or at least legally delivered to the vessel, but no case directly in point has yet been decided by the court of last resort.
Whatever be the rule with regard to contracts of affreightment, which are purely executory, it must now be considered as settled that if the ship enters upon the performance of its work, or any step has been taken towards such performance, the ship becomes pledged to the complete execution of the *402 contract, and may be proceeded against in rem for a nonperformance. Such was the view taken by Judge Emmons in the case of The Williams, 1 Brown’s Adm. 208; and although the court went much further in that case, and held that every maritime contract, from the moment of its inception, pledged the vessel to its complete performance, the case cannot be considered as a controlling authority for this proposition. In that case a tug was hired to go to the assistance of a vessel which had been reported aground on the shore of Lake Huron. On arriving at the spot it was found that the vessel had been gotten off, and the tug returned home without rendering her any actual assistance. It was held that a proceeding in rem would lie to recover the stipulated compensation. I have no doubt whatever of the correctness of this ruling. I have had occasion myself to apply the same doctrine in several cases which have arisen in this district since I have been upon the bench. Judge Baxter also adopted it in the recent unreported ease of the Melissa.
Prior to the decisions of the supreme court in the case of The Freeman, 18 How. 182, and The Yankee Blade, (in Vanderwater v. Mills,) 19 How. 82, the question of jurisdiction in the cases of executory agreements was unsettled, and even those cases cannot be said to have definitely fixed the measure of liability. They seem rather to have announced in general terms a doctrine from which the supreme court has not as yet shown any disposition to recede.
The question does not seem to have been settled in England, although in the case of The City of London, 1 Wm. Robinson, 88, Dr. Lushington was disposed to concede that “if a seaman is engaged on board a vessel, and the owners think fit to abandon the voyage for which the seaman has been engaged, he would not be entitled to sue in admiralty for his redress, but must seek his remedy at common law, by an action on the case.” This is the only intimation I have found upon the subject in the English admiralty, probably owing to the fact that it had no jurisdiction over contracts of affreightment until recently. The case of The Schooner Tribune, 3 Sumner, 144, decided by Mr. Justice Story, *403 favors the view taken by the libellant here. This was a contract tinder which the Tribune engaged to be ready within three days to load for the libellant, and proceed without delay to Lubec to take in a cargo, and proceed to Havana. After this memorandum was made a number of cedar posts were put on board of her by the libellant, as a part of her cargo, but before the schooner sailed the owners of the vessel ordered the cargo so laden to be put on shore, and attached it under process for an asserted debt due them on a formór voyage, for which they insisted libellant was liable. The charterer proceeded against the vessel, and Mr. Justice Story held her liable — First, upon the ground that the agreement constituted a charter and not a preliminary contract; and, second, because a portion of the cargo was actually taken on board, and the voyage was voluntarily broken up by the owners of the vessel. Hére, again, however, there was a part performance, which was evidently considered a material fact, although the opinion is not expressly put upon that ground. Indeed, the court intimates (page 149) that the question of jurisdiction depended rather upon the maritime character of the contract.
The case of The Flash, Abbott’s Adm. 67, was very similar. The master of a New York vessel contracted at the port of New York to transport a cargo across the East river to Brooklyn. He took a part of the cargo on board, but afterwards refused to take on the residue or to deliver that already laden. It was held that an action in rem would lie, both for the refusal to receive on board and the refusal to deliver. While a portion of the cargo was actually laden on board, the court apparently sustained the jurisdiction (page 70) upon the authority of the master to contract for the employment of the vessel, and upon the general doctrine of the maritime law that the vessel is bodily answerable for such contracts of the master made for her benefit. In the ease of The Pacific, 1 Blafceh. 569, the libellant had contracted for a passage to California; had prepared for the voyage at considerable expense, went to New York at the time appointed for sailing, and found that the accommodations were not such as he had bargained for, *404 and that the vessel was overcrowded and dangerous to life. He declined to embark and demanded back his passage money, which was refused. He then filed a libel in rem, for a return of the passage money and for his damages. Objection was made to a recovery upon the ground that at the time of the filing of the libel no cause of admiralty cognizance had arisen; that to give jurisdiction over a maritime contract the ship must have entered upon the performance, and the breach must have occurred in the course of the performance. Mr. Justice Nelson held this objection untenable, and said that the obligation resulted directly from the contract and not from the performance, which is simply in fulfilment and discharge of it. “The owner is bound as soon as he or the master settles the terms upon which the ship is to enter upon the service, and it is difficult to perceive why the liability of the latter should be postponed till the inception of the performance.” The reasoning of this case is, undoubtedly, in favor of the libellant. But it would seem that the decision might also be supported upon the ground that the libellant himself had partly performed his contract by the payment of his passage money, and his preparations for settlement in California. 7. do not deem the case inconsistent with the other authorities, which hold that in cases of purely executory contracts the libellant cannot proceed against the vessel.
All of these cases were prior to those of the Freeman and Yankee Blade. In the case of The Freeman, 18 How. 182, the question arose as to the liability of the ship for contracts made upon the faith of fraudulent bills of lading given by the captain for property purporting to have been shipped on board. In delivering the opinion Mr. Justice Curtis observed: “The law creates no lien on a vessel as security for the performance of a contract to transport cargo until some lawful contract of affreightment is made, and a cargo is shipped under it.” The case did not call for this opinion, and it must be considered as a dictum. At the same time it has been repeated so often in the same court, and has been so often acted upon as the doctrine of that court by courts of inferior jurisdiction, that it is difficult to say that it must not now be *405 considered as settled law. In the case of The Yankee Blade, 19 How. 82, there was a contract between the owners of certain steamboats, of which the Yankee Blade was one, to convey freight and passengers between New York and California. Among other things it was agreed that the America should proceed to Panama, and the Yankee Blade should leave New York at such time as to connect with the America. The owner of the Yankee Blade refused to employ his vessel according to this agreement, and sent her to the Pacific under a contract with other persons. For this breach of contract the libellant sued, assuming the vessel subject to a lien, which might be enforced in rem. The court held this contract to be nothing more than an agreement for a special and limited partnership in the business of transporting freight and passengers, and that the mere fact that the transportation was by sea was not sufficient to give a court of admiralty jurisdiction. In delivering the opinion Mr. Justice Grier said, in commenting upon the reciprocal obligations of the ship and cargo: “If the cargo be not placed on board it is not bound to the vessel, and the vessel cannot be in default for the non-delivery, in good order, of goods never received on board. Consequently, if the master or owner refuses to perform his contract, or for any other reason the ship does not receive cargo and depart on her voyage according to contract, the charterer has no privilege or maritime liens on the ship for such breach of contract by the owners, but must resort to his personal action for damages, as in other cases. The case did not necessarily call for the expression of this opinion, as the contract was not, properly speaking, maritime.
Since these eases were decided I have found none in which the courts have sustained a libel upon a purely executory contract except that of Oakes v. Richardson, 2 Lowell, 178, which was in personam. In Rich v. Parrott, 1 Cliff. 55, Mr. Justice Clifford, in alluding to these cases, intimated the opinion that if the master or owner refuses to perform his contract, or for any other reason the ship does not receive the cargo, tho charterer has no privilege or lien on the ship for such a breach of contract by the owners, but must resort to his personal *406 action for damages. The case, however, went off upon another point. In The Hermitage, 4 Blatch. 474, the charterer puta cargo on board and then took it out and refused to-fulfil the charter-party, alleging that it had been violated by the owner of the vessel. It was held that the lien attached as soon as the cargo was put on board, and that the owner could libel the cargo for the breach: but Mr. Justice Nelson put his opinion upon the express ground that the case did not fall within that class of cases where nothing has been done under the charter — that is, where no goods have been placed on board— in which case he says there can be no lien upon the vessel or cargo under the charter-party. In The Pauline, 1 Biss. 390, the vessel had been chartered to the libellant, but nothing was done under the charter when the owners refused to comply with its covenants. The libel was dismissed, the court drawing a distinction between that and the case of The Bark Winslow, 4 Biss. 13, where the master had contracted to receive on board a quantity of wheat from a warehouse. Through the negligence of the vessel a portion of the wheat was lost in the process of delivery from an elevator, and it was held that the wheat was delivered to the vessel when it passed from the elevator to the pipe, and that she was liable for the wheat lost. The decision was put upon the express ground of such delivery. The case of The Bark Edwin (Buckley v. The Naumkeag Steam Cotton Co. 24 How. 386) contains nothing inconsistent with the dicta in the former cases. The loss was occasioned by the explosion of the boiler upon a lighter upon which the cargo was being carried from the shore to the vessel. It was held that a delivery to the lighter was a delivery to the vessel, and that the vessel became liable from that moment. The court cited and distinguished the former cases, and held that there was no necessary physical connection between the cargo and the ship as a foundation upon which to raise a. liability.
In the ease of The General Sheridan, 2 Benedict, 294, Judge Blatchford refused to sustain an action in rem to recover damages occasioned to the charterer by the refusal of the vessel to proceed under her charter, basing his de *407 cisión expressly upon the dicta in the cases of The Freeman and The Yankee Blade, “any duty that may be violated by the owner or master, before the cargo is put on board, is not a duty of the vessel, or one for the breach of which a lien on the vessel is created or can be enforced.” In The Keokuk, 9 Wall. 517, the dicta in the former cases are repeated, but otherwise the case is not of value here, as there was no contract to carry the wheat in question, and no delivery of the barge into the custody of the steamer. In Oakes v. Richardson, 2 Low. 173, the learned judge for the district of Massachusetts held that a court of admiralty had jurisdiction of a personal action by the charterer against the owner of the vessel for damages, in not proceeding to the port of loading, and that such jurisdiction did not depend upon the fact of the cargo or some part of it having been put on board the vessel, but intimated the opinion that until some service'had been begun there would be no privilege against the vessel under such circumstances. So in Cox v. Murrey, Abbott’s Adm. 340, it was said that the court was incompetent to sustain an action for a mere breach of contract when no services had been rendered nor any material furnished, nor any other acts done under it upon the vessel. See, also, Hannah v. The Schooner Carrington, 2 Law Monthly, 456.
Prom this review of the cases it will be seen that, with the exception of the dictum in the case of the Williams, there is no authority for saying that a court of admiralty has jurisdiction in rem for the breach of a purely executory contract. There is reason as well as authority for the proposition. If the owner of a cargo has a privilege upon the vessel for a breach of his contract, the vessel would be entitled equally to a lien on the cargo for a refusal of the owner to put it on board, and it might be seized upon the dock or anywhere else for the satisfaction of such lien. If the jurisdiction is sustained in this class of cases it ought also to include cases of contract to repair the vessel or supply her with stores, in which the material-man would be entitled to a lien, though nothing had been done under the contract. I find it impossible to say with Judge Emmons, in the case of The Williams, *408 that the dicta in The Freeman and The Yankee Blade are “now expressly overruled.” While the point has not been directly adjudicated in the court of last resort, I find no intimation in any of the later eases of a disposition on the part of that tribunal to recede from the doctrine there announced.
The continental authorities are explicit to the effect that there is no privilege upon the ship until the goods are laden on board. Indeed, they seem to go further, and hold that even after they are shipped they may be withdrawn by the freighter at any time before the vessel breaks ground. By section 191 of the French commercial code, among the debts which are termed privileged are damages due to shippers for a failure to deliver merchandise which they have put on board, or for reimbursement of injuries suffered by the cargo through the fault of the captain or crew. By section 280 the ship, her tackle and apparel, the freight and the cargo, are respectively bound to the covenants of the parties. These sections are substantially repeated in the codes of Belgium, §§ 191, 280; Italy, §§ 285, 288; and Spain, §§ 596, 797.
In commenting upon these provisions Dufour observes, (1 Maritime Law, 325 :) “With regard to cases which give birth to a privilege in favor of the shippers it will be seen that by the Code they are limited to two, viz.: damages — First, for failure to deliver the merchandise shipped; second, for reimbursement of the damages suffered through the negligence of the captain or crew.” These are the same theories that obtain in the Consolato del Mare, as the foundation of the. privileges of merchants, and experience has not indicated that it is necessary to extend them to other cases. I believe, then, that I ought to add, with Valin, that this disposition is limited. Thus, although article 280 declares that the ship is bound to the performance of the charter-party, this obligation does not confer a lien in favor of the merchant, if the non-performance of which he complains -does not fall within one of the cases provided by our article, (191.) Valin cites as example, in this regard, the damages obtained by a shipper who, upon the occasion of the seizure of the ship or otherwise, has been obliged to withdraw the merchandise which he has put *409 on board, or has been hindered from completing his lading. It is evident that in this regard, adds Yalin, his debt is simple and ordinary, without any sort of privilege.
Caumont, in his Dictionary of Maritime Law, title, “Armateur,” p. 234, § 54, says: “Article 280 of the Code of commerce is limited to cases specially provided for by article 191, either to damages due the shipper for failure to deliver the merchandise taken on board, or for injury done it by the negligence of the captain. Aside from these cases, and especially when no merchandise is laden on board, there is no room for a lien upon the vessel, although the shipper might obtain, by judgment, an allowance for damages for the non-performance of the contract of affreightment.”
See, also, 2 Boulay Paty Droit, Com. et Mar. 299, cited in The Yankee Blade, 90; 1 Hoechster et Sacre Droit Mar. 74. In 2 Malloy, c. 2, § 2, the law is stated as follows: “And, therefore, so soon as merchandise and other commodities are put aboard the ship, whether she be riding in port, haven, or any other part of the seas, he that is exercitor navis is chargeable therewith.
I think the law is too well settled to be disturbed. The libel must be dismissed.