## THE ARCTURUS.

*(District Court, N. D. Ohio, E. D. October Term, 1883.)*

1. COMMISSIONER'S REPORT—EXCEPTIONS SUSTAINED.
    Exceptions to a commissioner's report awarding to the original libelants the proceeds from the sale of a vessel, and excluding other creditors whose claims were of later origin, though of equal rank, sustained.
2. MARITIME LIENS—DEFINED.
    A maritime lien is a *jus in re;* it accompanies the property into the hands of a *bona fide* purchaser, and can be enforced or divested only by a proceeding *in rem.*
3. SAME—IN WHAT ORDER PAID.
    All claims against a vessel should be paid in the inverse order of their origin; following the decision of this court in the case of *The Selkirk.*
4. SAME—HOW PAID.
    All claims of equal rank against a vessel should be paid ratably in proportion to the amount of each claim, and unaffected by any priority of date in the commencement of legal proceedings; following *Vandewater* v. *Mills,* 19 How. 82.

In Admiralty.

*H. D. Goulder,* for libelants.

*Mix, Noble & White,* for respondents Dunford and Alverson.

WELKER, J. In this case an important question is for the first time presented to this court in a form requiring its careful consideration and determination. For several years past it has been the practice to award to the party first procuring the seizure of a vessel by virtue of proceedings in admiralty, a precedence over the holders of other claims of the same (or lower) rank in the distribution of the proceeds of sale of the property seized, where the fund in the registry proved insufficient for the satisfaction of all; the commissioner to whom references have been made for the purposes of distribution having so reported on the authority of Ben. Adm. 332, and such others as have been in accord with Judge BENEDICT's views on this question. To these reports, so in harmony with the opinions of this able jurist, no formal exception has heretofore been taken, and until now the judicial determination of the question by this court has not been invoked. The language of Judge BENEDICT on this subject is as follows:

"The order of distribution or marshaling of the proceeds (of the sale of a vessel) is settled by the court according to the legal priority. * * * In claims of the same rank the one first commencing his proceedings is preferred

in the distribution. The party first seizing holds the property against all other claims of no higher character."

In support of the text so quoted, reference is made to the following authorities: *Blaine* v. *The Carter*, 4 Cranch, 328; *The Paragon*, 1 Ware, 322; *The Phebe*, Id. 359; *The Globe*, 1 (should be 2) Blatchf. C. C. 427; *The Adele*, 1 Ben. 309; Boyd, Proc. 45.

From an examination of all the above, excepting the last named, which is not at hand, it appears that the case of *The Globe* was decided by Justice NELSON, of the supreme court, holding the circuit court in 1852. The language used by the learned judge in terms would fully support Judge BENEDICT's *dictum*, viz.:

"It has been argued that this maritime lien against a vessel for supplies and materials furnished to her master at a foreign port, is an abiding lien, and adheres to the vessel, and may be enforced over all claims of a like nature subsequently accruing in the course of her employment. I cannot assent to this position. On the contrary, I am satisfied that the true rule upon the subject is that, in respect to maritime liens of this description, the party first instituting legal proceedings for the purpose of enforcing his claim against the vessel is entitled to satisfaction out of the proceeds of her sale."

The question to which this language was applied was whether, as against a purchaser of a vessel at judicial sale, in virtue of proceedings *in rem* under the water-craft law of Ohio, one who had previously furnished supplies to the vessel in a foreign port could enforce a lien upon her; and was not a question as to who had a prior right to the satisfaction of his claim out of a fund in the registry of the court produced by her judicial sale. And the learned judge held that the sale, having been in a proceeding *in rem*, "must be held conclusive upon the transfer and disposition of the vessel in question, in whatever place she may be found, and upon the title to her, by whomsoever it may be questioned, and whether involved directly or collaterally." In other words, there had been a judicial sale in a proceeding *in rem*, which was notice to the world, and the purchaser took the vessel divested of all liens not presented in that suit for adjudication. Perhaps, if the fund produced by the sale of the Globe had been in the registry of Judge NELSON's court, and if the controversy had been in regard to priority of right to share in the fund, the language of the court would have been somewhat modified. The case of *Blaine* v. *The Carter*, 4 Cranch, 328, seems even more unsatisfactory as an authority in support of Judge BENEDICT's *dictum*, and the case of *The Adele*, 1 Ben. 309, maintains the theory that all claims upon the fund in the registry which are of equal rank should be satisfied in the order in which the several libels are filed. The reference to the cases of *The Paragon* and *The Phebe*, in Ware, 322, 359, seems still more unfortunate as authority for the doctrine they are supposed to sustain, as will be seen from the following quotation from the opinion of the court in the case of the *The Paragon*, viz.: "When all the debts hold the same rank of privilege, if the property is not sufficient to

fully pay all, the rule is that the creditors shall be paid concurrently, each in proportion to the amount of his demand." The same language is adopted in the subsequent case of *The Phebe.* Thus it appears that the theory of Judge WARE was diametrically opposed to the doctrine in support of which it seems to have been quoted. I apprehend that the opinion of Judge BENEDICT, and those who hold with him on the question at issue, rests upon the theory that the maritime lien is simply a right to proceed by suit against a vessel or other thing which is the subject of a claim, by name; in other words, by an action *in rem,* instead of proceeding by suit against the owner of the thing, *in personam.* And this being so, the one who first asserts that right is entitled to complete satisfaction of his claim as against others of equal rank. And this seems to have been the view taken by Mr. Justice NELSON in the case of *The Globe.*

"The question has been the subject of examination by the learned district judge for the southern district of New York. In a case which came before him in 1841, [*The Triumph,*] he held that the true meaning of a maritime lien was, that it rendered the property liable to the claim without a previous judgment or decree of the court, sequestering or condemning it, or establishing the demand as at common law, and that the action *in rem* carried it into effect; that the appropriation of the property to that end became absolute and exclusive on suit brought, unless superseded by some pledge or lien of paramount order; that it resulted from the nature of the right and the proceedings to enforce it, that the first action by which the property was seized was entitled to hold it as against all other claims of no higher character; *that the lien, so termed, was, in reality, only a privilege to arrest the vessel for the demand, which of itself constituted no incumbrance on the vessel, and became such only by virtue of an actual attachment for the same.* I concur fully in this view."

From this theory of the maritime lien the doctrine of "first come, first served," would seem naturally to flow. But without undertaking to criticise its soundness from a philosophical point of view, or allude to the consequences involved in it, it may be sufficient to draw attention to the fact that, at a later period, the supreme court of the United States, in the case of *Vandewater* v. *Mills,* 19 How. 82, has quite differently defined the maritime lien. In that case Mr. Justice GRIER, delivering the opinion of the court, says:

"The maritime 'privilege' or lien is adopted from the civil law, and imports a tacit hypothecation of the subject of it. It is a *jus in re,* without actual possession, or any right of possession. It accompanies the property into the hands of a *bona fide* purchaser. It can be executed and divested only by a proceeding *in rem.* This sort of proceeding against personal property is unknown to the common law, and is peculiar to the process of courts of admiralty."

This language seems well calculated to convey the idea that the maritime lien is something more than a mere right to *sue the thing* which is the subject of it; that it imports a right in the thing; or, in the language of the learned justice, a *jus in re,* enforceable and made effectual by a proceeding *in rem,* and only divested by the payment of

the claim it is intended to secure, or by a judicial sale of the property in a proceeding *in rem.*

In the case at bar the fund to be distributed (and remaining in the registry, after sundry payments of preferred claims, pursuant to previous orders of the court) amounted to the sum of $1,388.19; from which the commissioner, in his report, proposes to deduct the unpaid costs, $215.55, and the sums decreed in favor of sundry intervening creditors, all amounting to $972.66. Said creditors are five in number, and are all paid in full except one, viz., J. P. Donaldson, whose claim accrued partly in the season of 1881, and partly in that of 1882; while those of the other four creditors accrued wholly in the season of 1882; for this reason being preferred over the older claims, pursuant to a former ruling of this court in the case of *The Selkirk:* "All claims ought to be paid in the inverse order of their origin, dividing by seasons, rather than by voyages, as upon the ocean."

The commissioner proceeds to award the residue of said fund, $199.98, to Wolf & Davidson, on their decree for $2,265.40, by reason of their being the original or first libelants, on whose process the fund was brought into the registry, to the exclusion of the claim of Dunford and Alverson, amounting to $3,831.19, and of the balance of Donaldson's claim. To this report of the commissioner Wolf & Davidson, by their counsel, except, whose complaint is that the report does not award the whole fund, less costs, to them, instead of paying the five creditors whose claims were of later origin. To sustain this exception would amount to a repudiation of the doctrine of *The Selkirk* followed and quoted by the commissioner. No sufficient reason has been assigned in the argument for doing this, nor has any authority been quoted which would justify the court in making the change demanded by the exception, and thus unsettling the well-established practice; it is therefore overruled.

Exception to said report has also been filed by Dunford and Alverson, the grounds of which are therein stated as follows: (1) In that he (the commissioner) has disallowed their claim; (2) in that he has allowed any portion of the claim of libelants, (Wolf & Davidson;) (3) in that he has failed to apportion the sum of $199.98 (the balance after paying certain other claimants) ratably between libelants and them.

In the argument of counsel no stress is laid upon the first or second of the above grounds; but the question involved in the third has been discussed with much ability and evidence of research. If it cannot be said that the authorities preponderate in favor of the exceptor's views, it certainly appears true that the conflict among them is so evenly waged that the court is left at liberty to adopt that theory which seems, in its judgment, most in accordance with the legal principle promulgated by the supreme court of the United States, and in accordance with its own views of justice and propriety. If the maritime lien imports a *jus in re,* or proprietary right, in the ship, it is not

easy to understand why the mere act of instituting suit *in rem* for the enforcement of a lien should operate to divest or supersede the lien of another party whose claim is of equal rank and merit, who, in obedience to the proclamation, comes into the proceeding for the assertion of his claim before the final decree disposing of the fund produced by the sale of the vessel. The mere accident (it may be) by which one of several libels happened to be first brought to the clerk's office and filed, seems quite insufficient as an authority for the original libelants to sweep the fund to the exclusion of all others having co-ordinate claims. If this may rightfully be done, why not exclude the claims of higher rank as well? Their holders are guilty of the same laches as those of equal rank. It may be said that the one who first causes the arrest of a ship assumes the responsibility of the costs and expenses of the proceeding, and is primarily liable for damages for a false arrest. The answer is that the court invariably makes the just costs and expenses a first charge upon the fund in the registry, so that no essential risk to the honest libelant is involved; and if one causes the arrest of a ship on a claim found to be dishonest and fictitious, he well deserves to be mulct in damages.

It is conceded that a party holding a claim against the ship arrested in the admiralty, who neglects to obey the injunction of the court requiring "all persons claiming the same * * * to appear before the court, * * * then and there to interpose a claim for the same and to make their allegations in that behalf," until the property is sold and the proceeds distributed by order of the court, is effectually cut off from all remedy against the ship and its proceeds. His lien is lost by his neglect, the proceeding *in rem* being notice to all the world. It is divested by a judicial act; by the solemn judgment of a court of competent jurisdiction. This is in accordance with the opinion of the supreme court in the case of *Vandewater* v. *Mills.* "It can be executed and divested *only* by a proceeding *in rem.*"

Dunford and Alverson's libel was not only filed before any "final decree" in this case, but nearly two months prior to the interlocutory decree or order by which the court found and decreed the sum due Wolf & Davidson as damages. The date of filing was also prior to the sale of the schooner, which was made under an interlocutory order for that purpose. The claims of Wolf & Davidson, and Dunford and Alverson, and the unpaid remainder of the claim of Donaldson, are of equal rank, and should share in the residue of the fund produced by sale of the Arcturus, viz., $199.98, ratably in proportion to the amounts of each claim unaffected by any priority of date of the commencement of proceedings in this case.

The last exception of Dunford and Alverson is sustained, and the case is again referred to the same commissioner with instructions to report anew in accordance with the foregoing.

The following authorities, among others, have been considered, and

are cited in support of the conclusions of the court, viz.: *The Paragon*, Ware, 322; *Harmon* v. *Bell*, 22 Eng. L. & E. 62; *The Avon*, 1 Brown, 170; *Vandewater* v. *Mills*, 19 How. 82.

See *The De Smet*, 10 FED. REP. 483, and note, 489