## THE JULIA.

### BUTLER et al. v. THE JULIA.

### SIX OTHER LIBELS v. SAME.

#### (District Court, E. D. South Carolina. July 12, 1893.)

1. MARITIME LIENS—PRIORITY—ORDER OF BRINGING SUIT IMMATERIAL.
   The priority of maritime liens is determined according to their nature, and not according to the order in which suits are brought to enforce them.

2. ADMIRALTY—PRACTICE—INTERVENING LIBELS—ADVERTISEMENT.
   When a vessel libeled by a material man has been taken possession of by the court, and advertisement has been made, other material men may

intervene by libel praying warrants of arrest in order to detain the property in case security be given for its release, but in such case further advertisement is unnecessary.

3. MARITIME LIENS — UNDER GEN. ST. S. C. § 2389 — DISTRIBUTION — SPECIAL PRIVILEGE TO LABORERS.

Under Gen. St. S. C. § 2389, etc., providing that, where the proceeds of a sale are insufficient to satisfy the claims of certain lien creditors, labor shall have a percentage one-third greater than material men, only laborers are entitled to such increased percentage. The privilege does not extend to money paid by a material man for labor in putting in materials.

4. ADMIRALTY—PROCTORS' COSTS.

Where a vessel is libeled by material men, and thereafter other material men file libels in the nature of interventions to be perfected if the vessel is released, otherwise to operate on the balance of the proceeds of the sale, proctors' costs should not be allowed on such subsequent suits.

In Admiralty.   Libels by S. B. Butler, John F. Riley, William Johnson & Co., John Conroy & Co., the Steinmyer Lumber Company, Frederick Drews, and others against the steamer Julia for seamen's wages, and for materials.   The vessel was sold, and seamen's wages and costs paid.   Heard on exceptions by Butler and Riley to the master's report.   Exceptions overruled.

C. B. Northrop, for exceptors.

SIMONTON, District Judge.   This case comes up on exceptions to the report of the special master.

The steamer Julia was engaged in trading between the city of Charleston and the adjacent waters, carrying freight.   She was libeled and arrested at the suit for wages of certain of her crew. She was also libeled by two material men, S. B. Butler and John F. Riley, in separate libels, on each of which a warrant of arrest was issued.   The same proctor represented the crew and these two material men, and, in advertising the warrant of arrest under admiralty rule No. 9, he inserted the libels of the latter also. A number of libels were then filed by material men, in each of which warrants of arrest were issued, but in no instance were any of these followed by publication.   This is the home port of the Julia.   The material men claim under a statute of the state of South Carolina, Gen. St. § 2389 et seq.   This statute gives a lien to any person for labor performed, materials used, or labor and materials furnished in the construction of vessels, or for provisions, stores, or other articles furnished for or on account of any ship or vessel in this state, the lien to be next to seamen's wages.   If the claims be held by more than one person, they are marshaled, and the proceeds of sale distributed without preference.   If these proceeds be insufficient, the distribution is pro rata, except that labor shall have a percentage one-third greater than material men.

The Julia has been sold under order of this court in the libels for wages.   After paying the wages and costs, the proceeds are largely insufficient to pay all the material men.   The master has reported a taxation of the costs to be paid, allowing each material man proctors' costs.   The remainder, he reports, should be distributed

pro rata. One of the libelants, Riley, is a master mechanic. In his bill for repairs he itemizes and charges so much for labor and so much for materials.

Butler and Riley except to the report. Both claim priority over all other material men, because they filed the first libels; because, also, they were the only libelants who advertised; and Riley insists that the master was wrong in not recognizing the preference claimed for the labor items in his bill.

No question has been made as to the constitutionality of the South Carolina statute. That question has not been considered, and is not now decided.

The first question is, have the material men who filed the first libels secured thereby priority of payment out of the proceeds in the hands of the court? This, as we have seen, is the home port of the Julia. But for the state statute these libelants would have no lien, (The Young Mechanic, 2 Curt. 405;) and the nature and extent of the lien is measured by the state statute, (The Mary Gratwick, 2 Sawy. 344.) It would seem, therefore, that if the state statute which creates the lien gives it to all material men alike, and puts them on an equal footing, this court, administering the lien, would do likewise. It is insisted, however, that, although the state statute creates the liens, when they come into this court they are treated and enforced as maritime liens, and that, with regard to maritime liens, the preference is under the rule prior petens,—first come, first served. There is respectable authority for this with regard to maritime liens. Ben. Adm. § 560; Cohen Adm. p. 197. But these writers are overruled by authority, as well as by reason. They do not state the law correctly. The true doctrine is that liens like these have equal rank, are not affected by the order in which the suits were brought, and share pro rata. The J. W. Tucker, 20 Fed. Rep. 129, in which all the cases are quoted and the rule stated; The Arcturus, 18 Fed. Rep. 743; The Grapeshot, 22 Fed. Rep. 123; Vandewater v. Mills, 19 How. 82. And Mr. Henry, in his Admiralty Jurisdiction, shows that this is the true doctrine. Indeed, the rule cannot be otherwise. A maritime lien is jus in re; a right in property in the res, enforceable against all the world. The suit in admiralty enforces this lien, which does not owe its origin to, or its existence because of, the suit, and therefore does not take rank from the suit. In this it differs from liens created by attachment. "Incumbrances created by attachment must take rank, in the absence of positive provisions of law to the contrary, according to the dates of such attachments; but incumbrances created by maritime liens are marshaled according to the causes from which such liens spring; that is, they subsist and bind the property, not in virtue of the legal process used to enforce them, but by operation of the law which creates them, and fixes them on the property the moment the debts are incurred." The Young Mechanic, 2 Curt. 413.

The next question is, are the other material men in court, none of them having advertised? The reason for the advertisement is

plain. In order to give the court complete jurisdiction, so that a decree for sale will secure clear title, the notice is given to all the world. In the present case the court took possession of the res, and this advertisement was necessary. Having been made, the jurisdiction was complete. No further advertisement was necessary,—indeed, we may say, would have been proper,—unless the claimant had under the first libels given security, and released the vessel. The libels filed after her arrest and the advertisement were interventions. They do not demand the redelivery of the vessel, and seek only the payment of a claim in the ultimate disposition of the case. The Two Marys, 12 Fed. Rep. 152. They were properly in the form of a libel, and properly prayed warrant of arrest, and as properly the warrants were in the hands of the marshal, not, however, to be acted upon immediately, but "for the purpose of securing the further detention of the property in case security be given for its release, under Act March 3, 1847, c. 55; or, in the event of its discharge from arrest in the mean time for the purpose of having it again arrested to answer this new demand." 2 Conk. Adm. 540.

The next question is as to the claim set up by Riley for increased percentage for his items of labor. Riley is a contractor, and in making out his bill, and in ascertaining its total, he charges in the sums paid by him for the labor in putting in the materials. The state statute gives the lien to any person, for labor performed, for materials used, or for labor and materials furnished. This clearly distinguishes the three classes,—the laborer, the party furnishing the materials to be used, and the person furnishing labor and materials. The increased percentage is given to those having liens in the first class, for labor; that is to say, the laborer.

The exceptions are overruled.

The special master has allowed costs of proctors in all the cases. With the exception of the claims of Butler and Riley, the subsequent proceedings were all interventions, inchoate suits, to be perfected in case the Julia was released, and if she be not released, but sold, then to operate upon the balance of the proceeds of sale. The parties themselves show their own construction of their action. No decree by default was taken in any case. They went at once into marshaling the remainder of the proceeds. No proctors' costs are allowed in the cases reported, except in the Butler and Riley claims.

Let the case go back to the special master, for the purpose of restating the division in accordance with this opinion.