THE PRISCILLA.

(Circuit Court of Appeals, Second Circuit. February 25, 1902.)

No. 110.

1. MARITIME LIENS—LOSS OF PASSENGER'S BAGGAGE—DELIVERY TO VESSEL.

As regards liens upon a vessel for breach of a contract of affreightment, there is no distinction in principle between a contract for the transportation of a passenger with his baggage and one for the transportation of merchandise, and, by analogy with the rule in the latter case, no lien arises for loss of baggage unless at the time of such loss either the passenger had been received on board, or his baggage had been put into the custody or control of the vessel.

2. SAME—ADMIRALTY JURISDICTION.

By the custom of a steamship company, it received at its pier baggage sent there by passengers intending to take passage on its vessels, and kept the same until claimed by the passengers. By the rules of the company, the passenger was required to present a ticket, and have

his baggage checked, before it was received on board a vessel. Libelant sent baggage to the pier, where it was received; and he subsequently purchased a ticket for one of the company's vessels, which he presented to the baggage master, but his baggage could not be found. Prior to such time the company had no notice to whom the baggage belonged, or when or by what vessel it was to be shipped. *Held*, that whatever the liability of the company, as carrier or warehouseman, libelant had no lien for the loss of the baggage on the particular vessel for transportation upon which he afterward contracted, but which at the time of the loss had not entered on performance of the contract, which would support an action in rem in a court of admiralty.

Appeal from the District Court of the United States for the Southern District of New York.

Wm. Greenough, Jr., for appellant.

Washington E. Page, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The court below decided that a maritime lien was created against the Priscilla for the value of the libelant's baggage, lost while in the custody of the vessel's owner. 106 Fed. 739. Unless this conclusion was correct, the court had no jurisdiction of the action in rem. The Priscilla was one of a line of steamships operated by the New York, New Haven & Hartford Railroad Company, known as the "Fall River & Providence Line." The company was accustomed to receive at its pier in New York City the baggage sent there by passengers intending to take passage on its vessels, and keep such baggage until claimed by the passengers. Before the baggage is shipped, the rules of the company require the passenger to show a ticket, and have his baggage checked. Storage is charged on baggage after it has remained uncalled for for more than 24 hours. Until the owner comes to the pier and claims his baggage, it is held by the baggage master; and, until it has been checked, no baggage is received by the company on board a vessel.

On the afternoon of July 3, 1899, a trunk and a dress-suit case belonging to libelant were delivered by an expressman to the agent of the steamship company at its pier. Subsequently, on the same afternoon, the libelant came to the pier and purchased a ticket for Boston. He then went to the baggage agent, claimed his baggage, and presented the receipt of the express company, together with his ticket. The agent found the trunk, but the dress-suit case was missing. Before the Priscilla sailed, the baggage agent told the libelant that, if it was found, it would be forwarded on the next boat. The libelant had his trunk checked, and took passage by the Priscilla. The dress-suit case was never found.

A contract for the transportation of passengers by sea, like one for the transportation of merchandise, is a maritime contract, and there is no distinction in principle between them. The same liability attaches both to the owner and to the vessel for breach of performance. The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397.

When a vessel enters upon the performance of a contract of affreightment, she becomes pledged to its complete execution, and may be proceeded against in rem for any breach; but, when the

contract is purely executory, no lien attaches for the breach. The Freeman, 18 How. 182, 15 L. Ed. 341; The Yankee Blade, 19 How. 82, 15 L. Ed. 554. The question was carefully considered, and the authorities fully collated, in Scott v. The Ira Chaffee (D. C.) 2 Fed. 401. Later adjudications to the same effect are The Prince Leopold (C. C.) 9 Fed. 333; The J. F. Warner (D. C.) 22 Fed. 342; The Vigilancia (D. C.) 58 Fed. 698. In The City of London, 1 W. Rob. Adm. 88, Dr. Lushington inclined to the opinion that "if a seaman is engaged on board a vessel, and the owners think fit to abandon the voyage for which the seaman has been engaged, he would not be entitled to sue in admiralty for redress, but must seek his remedy by an action on the case." In The Bella (D. C.) 91 Fed. 540, it was decided that there is no lien on the ship for the enforcement of a contract for the carriage of a passenger who has not rendered himself on board for the purpose of being carried. In The Eugene, 31 C. C. A. 345, 87 Fed. 1001, the same proposition was decided by the circuit court of appeals. Following the analogy in the case of a contract of affreightment, we have no doubt that the lien does not arise until either the passenger has been received on board, or his baggage has been put into the custody or under the control of the vessel.

In the present case the baggage was lost before the company ha· notice that it belonged to the libelant, and apparently before the libelant had entered into any contract of carriage. It was in the custody of the company, in contemplation that he would become a passenger; but the relation of carrier and passenger was inchoate, and the custody was a matter preliminary, although accessory to a contract of carriage. When baggage is delivered, as it was in this case, without any directions as to its destination or time of shipment, the carrier cannot be expected to know to whom it belongs, or whether it is to be carried by any particular vessel of the line, or even whether it is to be carried at all. Under such circumstances, it is in no sense within the custody or control of any particular vessel or its officers.

It is unnecessary to consider whether the company assumed the liability of a carrier, or only that of a warehouseman, towards the libelant. It suffices that the breach of its obligation took place before it had entered upon the performance of any contract of carriage, and consequently did not create any lien upon the vessel.

The decree is reversed, with costs, and with instructions to the court below to dismiss the libel.