### PETERS v. TAULANE et al.

(District Court, E. D. Pennsylvania. April 12, 1921.)

#### No. 45.

1. **Shipping ☞62—Master may bind owners through ship only.**
   The master of a vessel may bind the owners through the ship, but they are not otherwise bound, except as the law of contracts binds them, and mere ownership does not imply authority in the master to bind the owners personally, unless the ship is bound.

2. **Shipping ☞75—Part owner not personally liable for breach of executory contract to carry cargo made without his authority.**
   A part owner of a vessel is not liable in personam for damages for breach of an executory contract for her employment to carry cargo, when the contract was not made by him nor by any one with his authority, but was made without his knowledge and was repudiated by him as soon as known to him, and when he was not owner at the time of its breach.

In Admiralty. Suit by David West Peters against Lewis B. Taulane and others. Decree for respondents.

Conlen, Brinton & Acker, of Philadelphia, Pa., for plaintiff.
Howard M. Long, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. The instant case presents the same facts, by the same evidence, as that ruled by Judge Lynch, of the district of New Jersey (opinion not yet reported). Concurring as we do in the judgment he has rendered, we accept and adopt the findings made and conclusions reached by him in dismissing the libel, with costs.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A number of interesting questions have been raised, and there is no need to discuss others not raised. There is one, however, worthy of a word. It raises the broad question of the liability of a vessel owner merely qua owner. When amplified to meet the facts of this case, it is whether the owner of a share (no matter how small) in a vessel is merely, because an owner, responsible in solido in damages for the breach of an executory contract of employment of the vessel when the contract was not made by him, nor by his authority, nor with his knowledge, and was, as soon as known to him, repudiated, and the default was one which he did not anticipate nor could have prevented, and was not committed until he had ceased to be an owner.

A skeleton statement of the facts will show this to be the broad question presented in the instant case. The respondents in this proceeding each owned a small share in the schooner Henry Lippett. She was managed by her master, whom Judge Lynch has found to be her pro hac vice owner. While she was absent on a voyage, the charter party, on which the libel is based, was executed. By it the schooner engaged to carry a cargo to France. The parties to the contract were A. D. Cummins & Co. and the libelants. The former described themselves to be agents of the vessel. It is to be observed that they did not profess to act for the respondents. Cummins & Co. in fact had no authority from any one except the pro hac vice owner. The respondents knew nothing of the charter party or the intended voyage. By it the schooner was subjected to the danger of attack by submarines. As soon as the respondents learned of the contract they protested and repudiated it. The result was the pro hac vice owner offered to buy their shares, and did so. The entire interest in the vessel was then sold to other parties, with the expectation on the part of respondents that the voyage would be performed. The new owners, however, employed the schooner in a different service. The libelants thereupon filed this libel, claiming damages for a breach of this executory contract to carry.

The cause of action against respondents is based wholly upon the fact of the ownership by each of a share in the vessel. Each is averred to be liable in solido for a sum many times the value of the share owned. Is an owner thus liable merely qua owner? If an owner in a vessel under the law maritime incurred the responsibility of a partner he would be thus liable. It is admitted, however, that he is not a partner nor liable as such. If he had entered into the contract by himself, or his authorized agent, he would of course be bound by it. In this case, however, he was not a party to the contract by himself, or any one having his authority, nor did he even know of it when made, nor did either of the parties to it know of him as an owner.

The admiralty rules recognize the responsibility sometimes of the vessel, sometimes of the owners, and sometimes of both, and authorize the filing of libels in rem, in personam, and both in rem and in personam. This liability in rem is because under the law maritime a ship is a personality or juridical person, possessed of rights, owing duties, and having a contractual capacity to incur obligations. Owners, of course, may contract, and, if they enter into maritime contracts, may

enforce or have them enforced in admiralty by a libel in personam. Independently of express contract they also are liable in personam in some, if not many, instances. This latter liability is the subject of our present inquiry. What is the ground and what the extent of it? In admiralty proceedings, the first question is whether the contract or cause is maritime. This is determined by its nature, and not by locality, nor even its subject-matter. A contract to effect the insurance of a ship is not, but a contract of marine insurance is, maritime. The building of a ship is not, but the repairing of a ship is, the subject of a cause maritime. Not every contract between shipowners for the employ even of ships on voyages is a maritime contract. Vandewater v. Mills, 60 U. S. (19 How.) 82, 15 L. Ed. 554. It has been held, however, that a contract such as in the instant case is maritime. Maury v. Culliford (C. C.) 10 Fed. 388.

Another test which at one time was applied was that an owner (in the absence of course of an express contract) was not liable when the ship herself was not liable. If this were still the test, these respondents would not be liable because a ship is not liable in the sense at least of being subject to a libel in rem to enforce a lien (in the absence of an hypothecation of the ship) in the case of an executory contract to carry, but is liable only if the voyage has been entered upon. Vandewater v. Mills, supra.

Again, it has been held, however, that this is no longer the test, and that shipowners (if otherwise liable) may be liable, although the ship is not. Maury v. Culliford, supra. The converse of the proposition that the owners are liable when the ship is does not help us in our search for a ground or principle of liability, because here, as has been seen, the ship is not liable. The principle upon which cases such as Maury v. Culliford, Queen of the Pacific (D. C.) 61 Fed. 213, and others, were ruled, that shipowners may be held in admiralty to their contractual obligations, is of no aid to us because, in the instant case, there is no such contract, and the question is not so much whether respondents are liable in admiralty, but whether they are liable at all.

The cases of contracts by agents, masters, or ship's husbands with authority to act for and bind the owners is of as little help, because here there was no authority other than that implied by ownership in the agent or master who made the contract, and it was not made by any one acting as ship's husband. Where there is a contract, admiralty, as before stated, has jurisdiction, and the contracting parties are bound, although the ship is not. Boutin v. Rudd, 82 Fed. 685, 27 C. C. A. 526; The Margaretha, 167 Fed. 794, 93 C. C. A. 184. Cases of contracts by masters for necessary supplies and repairs are of still less value, for the double reason that the present is not such a case, and such cases (aside from the act of Congress) are based upon authority implied from necessity to have been given the master to bind the ship and per consequence the owners.

Cases of collisions and other torts are not directly helpful because the basis of liability is there wholly different and springs from a policy of the law which, in the instant case, has no application. Indirectly ad-

miralty rule 19 (29 S. Ct. xii) favors the respondents because of its limitation of liability. The Acts of Congress limiting liability to the value of the ship does the like so far as they go, and they are applicable except in cases of contract binding the owner as a contracting party.

The more or less long line of cases in which ship and owners or both have been held liable when the voyage has been entered upon in like manner do not aid us because of the mutuality of obligations between ship and cargo which there subsists, and the principle that an owner who receives or expects the benefits of a contract, and to this end permits its execution to be entered upon is presumed to have ratified and adopted it.

The only case to which we have been referred which discusses the question of contract is The Margaretha, supra. In the other cases the question was not raised. In some the vessel herself was liable, and in the others the fair inference was the owners were not denying the contract. The Allerton (D. C.) 93 Fed. 219, The Monte A. (D. C.) 12 Fed. 331, The J. F. Warner (D. C.) 22 Fed. 342. In short, in the instance of every adjudged case in which the owners have been held liable there appears in the case some intelligible principle or ground of liability independent of mere ownership. In many of them, for illustration, the principle is analogous to the implied authority of a tenant in common to act for his cotenants.

We have been referred to and know of no well-considered case or acknowledged authority in which the principle upon which this libel is based that owners, merely qua owners, incur an unlimited liability for contracts not made or expressly or otherwise impliedly authorized by them, is recognized.

[1] The true principle seems to be that the master may bind the owners, through the ship; but they are not otherwise bound, except as the law of contracts bind them, and mere ownership does not imply authority in the master to bind the owners personally unless the ship is bound. The charter party and its signing under the findings of facts submitted herewith suggest the question (not raised) of whether there was any enforceable contract for the employment of the schooner. Into this, however, we have not gone.

A decree embodying the findings of facts and conclusions of law above indicated, and dismissing the libel, with costs, may be submitted.

### Findings of Facts.

1. The ownership of the schooner Henry Lippett was at the time of the contract in the respondents and others, the share of each being as follows:

> Lewis B. Taulane...........1/64th
> Edward G. Taulane.........1/64th
> George Taulane.............1/64th
> Estate of William C. May..3/64ths.

The respondents were not owners at the time of the breach of contract.

2. Adrian Hooper was the master of the schooner. Through an arrangement with the owners the schooner was operated under what is

known as the New Jersey half and half plan. Under this the master had full charge and control of the schooner, employing her as he saw fit, the owners exercising no right of control whatever. One-half of the gross earnings went to the master, out of which he defrayed all of what might be called the running charges and expenses. The other half went to the owners, who were at the charge for all permanent repairs and other expenses which maintained or enhanced the value of their property, and were in the nature of what might be called capital charges.

3. The fact finding is made (so far as it is a finding of fact) that the master was the pro hac vice owner of the schooner.

4. The master authorized A. D. Cummins & Co., who were ship-brokers, to enter into a charter party contract, engaging the schooner to carry a cargo for the libelants to a port in France. The owners gave no authority to Cummins & Co. to contract on their behalf, nor did they know such a contract was in contemplation, nor did Cummins & Co. or the libelants know that respondents were owners.

5. The charter party was altogether an affair of the brokers for the libelants and the master. It was prepared and signed by Cummins & Co., as agents for the schooner, and forwarded to the broker of the libelants for their signature. It was then in the form of a contract between the schooner and the firm, of which David W. Peters, one of the libelants, was a member. At the direction of his brokers, Gilmartin & Trundy, he changed the contract as it then was by striking out the name of the firm and substituting his own. His motive in so doing was wholly innocent, in that he was told by his broker to so do. No consent, however, to the change was given by the other party to it.

6. At the time the charter party was made, the United States was at war, and the voyage subjected the schooner to the risk of destruction. As soon as respondents learned of the charter party they repudiated it, and protested against the schooner making the voyage. In consequence of this the master offered to buy out the shares of the respondents, and they closed with the offer. The master then had the shares of respondents conveyed to other parties who employed the schooner in other service. None of the respondents were owners at the time of the breach.

## Conclusions of Law.

[2] 1. A part owner of a vessel is not liable in personam for damages for the breach of an executory contract for her employment to carry cargo, when the contract was not made by him or by any one with his authority, and was made without his knowledge, and was repudiated by him as soon as known to him, and when he was not owner at the time of its breach.

2. So far as it is a question of law, the master was pro hac vice owner.

3. The respondents are entitled to a decree dismissing the libel, with costs.