## THE HAVANA.

### WOODALL et al. v. THE HAVANA.

#### (District Court, E. D. Pennsylvania. May 16, 1898.)

MARITIME LIENS—REPAIRS IN FOREIGN PORT—PRESUMPTIONS.

When repairs are made in a foreign port on the order of the owners, the presumption is against the existence of a maritime lien; and the burden is on the repairers to clearly show a contract or mutual understanding for a lien. Where the owners are solvent, and do not understand that there is to be a lien, the mere fact that the repairers understood the contrary, and that they charged the work on their books in the name of the vessel, is not sufficient.[1]

This was a libel in rem by W. E. Woodall & Co. against the steamship Havana to recover a balance due for repairs.

John F. Lewis, for libelants.

Matthew Dittman and Henry R. Edmunds, for respondents.

BUTLER, District Judge. The suit is for $3,513, a balance due for repairs. The work was done at Baltimore, costing $16,000. The home port of the vessel was Philadelphia, the owners being Patrick Dempsey and Henry Hess, who reside here,—the former having four-fifths and the latter one. Dempsey, as managing owner, ordered and superintended the repairs. Mr. Woodall sought the work for his company and came to Philadelphia to obtain it. At that time it was supposed $5,500 would cover the cost. The vessel was subsequently taken to the libelants' place at Baltimore, and the work commenced in pursuance of the arrangement made here. It was afterwards found that much more must be done than had originally been contemplated, and a much larger bill be incurred. On the completion of the work notes were given for the $3,513 unpaid, and the vessel was delivered to the owners. About six months later—after she had passed into other hands—those of a stock company, of which Dempsey and Hess were members, (the notes then being due and unpaid) the vessel was attached under an alleged admiralty lien. The case presents no legal question. The libelants concede that to entitle them to recover, the proofs must show a contractual lien—not an implied lien, resting on given facts, as in the case of repairs on a master's order, but one resting on contract, as in cases of bottomry. A contract must therefore be proved. It need not however, be proved by writing, or other direct evidence; but may be established by inference from facts which show its existence. As is pointed out in The Mary Morgan, 28 Fed. 196, this doctrine (the admissibility of such inferences to establish contractual liens) is modern; and as it tends to uncertainty (the inferences depending largely on the disposition of the particular mind that draws them) it may be doubted whether the modern doctrine is wiser than the old, whether it would not have been safer to adhere to the rule which required direct evi-

[1] For a very full discussion as to maritime liens for supplies and services, presumption as to credit to vessel, see note to The George Dumois, 15 C. C. A. 679.

dence of such contracts where a lien is intended—especially in view of the fact that it is so easy for parties to say they thus contract, where they contemplate it, and it is so reasonable to expect they will. The modern rule is however well established, and I have but to inquire whether the facts of this case show the existence of such a contract. Of course a mutual understanding that a lien shall exist is a contract for a lien. Do the facts prove such an understanding? The question thus presented is the only subject for consideration. The burden of proof is on the libelants. They must show the contract clearly, or fail in the suit. The repairs having been made by order of the owners the legal presumption is against them. The Now Then, 5 C. C. A. 206 [55 Fed. 523]; The Wandrahm, 4 C. C. A. 414 [67 Fed. 358]; The Mary Morgan, 28 Fed. 196. As such liens are secret and therefore not favored, the libelants must, as before stated, prove the alleged contract clearly, to overcome the contrary presumption. Have they done it? There is no direct evidence of a mutual understanding on the subject. Mr. Woodall who represented his firm about the business, testifies that he understood they were to have a lien; while Mr. Dempsey testifies that he had no such understanding. This does not even tend to prove a mutual understanding. If Mr. Dempsey is believed his testimony proves that none existed, no matter what Mr. Woodall understood. What is there in the circumstances of the case to overcome the legal presumption— supported as it is by the testimony of Mr. Dempsey? The libelants point to the owner's pecuniary condition, and argue that Dempsey could not have supposed the repairs would be made without the security of a lien. Dempsey, however, at that time appeared to be entirely solvent; and no doubt was. He owned four-fifths of a valuable vessel, and also owned the business he then conducted, which was prosperous and seemed valuable. Hess owned the other fifth, and also appeared to be solvent. Why therefore should Dempsey have supposed the repairs could not be obtained without charging the vessel with a lien (an unusual practice) especially when a lien was not demanded, or mentioned, as the evidence clearly shows. The libelants wanted the work, sought it in Philadelphia where the owners lived, and could readily have ascertained their pecuniary standing, if they did not know it. It seems, therefore, unreasonable to believe that they relied upon a lien, and that Dempsey understood them to do so, and especially in view of the fact they did not ask for such security, or mention the subject. Dempsey's statement on cross-examination, that he owned no property, is misinterpreted by the libelants; it must be understood simply as an admission that he owned no other property than that before referred to—the vessel and his business. The libelants also point to the manner of charging the repairs in their books; but at most these charges are evidence only of their own understanding. They do not, however, amount to so much, because they are made in the manner common to all cases where the owners are looked to for payment—the vessel being named simply to identify the work. This is a matter of common understanding. The omission of the vessel is of course important where an alleged contract for lien is set up. The charges here are

as consistent with the nonexistence of a lien as with its existence. The libelants also point to the manner of making out their bills, and the correspondence respecting them. The bills, however were made out in conformity with the charges in the books, against the vessel and her owners. They would be, naturally, so made out whether a lien existed or not. The same must be said of the correspondence. I do not find anything in it inconsistent with the nonexistence of a lien and with Dempsey's testimony respecting his understanding. In one instance, at least, the libelants wrote for money on account of their bill "against the Havana"; generally they referred to their claim as for repairs to the Havana. Making the utmost of this language its meaning remains, at least, equivocal; whether there was or was not such an agreement as is set up, the claim might properly and I think naturally would be stated as the correspondence stated it. And besides the libelants at the time the bills were made out and the letters written had a claim, strictly against the vessel, as she was in their possession and could be held, at least until they were paid the proportion of their debt stipulated by the contract to be paid before delivery. I do not however attach importance to this last suggestion. It should also be noted that at the date of this correspondence very much of the work had been done and paid for; and it seems unreasonable to suppose that Dempsey would consider the special significance of the language referred to, and understand it to be an assertion of right to a lien, on his vessel; and therefore feel called upon to deny the assertion.

I will not pursue the subject. It is sufficient to say that a very careful examination of all the facts has satisfied me that they show nothing sufficient to prove the contract set up, and thus to repel the legal presumption before stated. If trivial or equivocal circumstances are held to be sufficient for this purpose the value of the rule founded on the presumption is lost.

The libel must be dismissed with costs.