### THE JENNIE MIDDLETON.

(District Court, D. New Jersey. May 23, 1899.)

1. MARITIME LIENS—REPAIRS IN FOREIGN PORT.
   Where repairs are made in a foreign port by order of the managing owners, the presumption is against the existence of a maritime lien.[1]

2. SAME—EVIDENCE.
   The refusal of the managing owners to pledge their personal credit for repairs does not justify an inference of the existence of a maritime lien, where the repairer agrees to accept payment out of the earnings of the vessel as they accrue.

Joseph H. Brinton, for libelant.
Flanders & Pugh, for claimants.

KIRKPATRICK, District Judge. The libel in this case was filed to recover a balance due for repairs on the schooner Jennie Middleton incurred under the following circumstances: In March, 1898, the schooner Jennie Middleton was in the yard of the libelants at Camden, N. J., in need of repairs. The captain did not feel authorized to determine the extent of these repairs, and the shipwrights were referred by him to Messrs. Bartlett & Sheppard, of Philadelphia, who were the managing owners of the schooner, for orders respecting the same. Subsequently Mr. Mathis, one of the libelants, and Mr. Bartlett, one of the managing owners, met at the office of Bartlett & Sheppard, and discussed the matter of the extent of the repairs to the schooner, when Mr. Bartlett directed Mr. Mathis to make only such repairs as he might deem necessary. Mr. Mathis then asked if Messrs. Bartlett & Sheppard would personally guaranty the bill for the repairs, to which they replied, "No." It is asserted by Mr. Bartlett and by Mr. G. W. Sheppard, Jr., who was present at the interview, that Bartlett said to Mathis that, if he (Mathis) took the

---

[1] As to maritime liens for supplies and services, see note to The George Dumois, 15 C. C. A. 679.

job of repairing the schooner, he would be obliged to, wait for his pay until the schooner had earned the money, and that to this Mathis agreed. Mathis denies that he did so agree, but I think his denial relates to any express agreement on his part; for I am satisfied that the understanding of the parties was that the repairs should be paid from the earnings of the schooner, as has been their custom in previous dealings. It is not by any one alleged that at this meeting, when the repairs were ordered, anything was said by which it was agreed or suggested that the repairs should be a lien upon the boat. After being repaired, the schooner was permitted to leave the shipyard, and upon her voluntary return there, some months afterwards, this libel was filed. In The Havanna, 87 Fed. 487, Judge Butler said that, "where repairs are made in a foreign port on the order of owners, the presumption is against the existence of a maritime lien, and the burden is on the libelant to clearly show a contract." In the case of The Havanna, the home port of the vessel was Philadelphia. The repairs were made at Baltimore. The alleged lien was for a balance on repairs ordered by the managing owner. The repairs were charged to the vessel. In the absence of evidence tending to show express agreement for lien, the libel was dismissed. In the case under consideration, the same state of facts exists. The record fails to disclose any evidence of express contract for lien, and the only circumstance from which it could be inferred is the refusal of the managing owners to pledge their personal credit for the repairs. I think such inference, however, unwarranted, in view of the evidence relating to the agreement of the libelant to accept payment for repairs to the schooner out of the earnings as they accrued. In accordance with the principles laid down in The Havanna, 87 Fed. 487, affirmed 92 Fed. 1008, and the other cases therein cited, the libel will be dismissed.