WOODALL et al. v. DEMPSEY et al.

(District Court, E. D. Pennsylvania. March 30, 1900.)

No. 25.

1. SHIPPING—REPAIRS—LIABILITY OF PART OWNER.

In the home port, where all the owners reside, the managing owner, although registered as such in the custom house, cannot, merely by virtue of that relation, contract for repairs, and bind his co-owners to a personal liability therefor.

2. SAME.

A part owner of a vessel, who purchased his interest from his co-owner, paying therefor a price largely in excess of its then value, upon an agreement that the vessel should be repaired at the cost of the seller, cannot be charged with personal liability for the cost of such repairs, made under a contract with his co-owner as managing owner, because of the fact that he knew such repairs were being made, and that their cost greatly exceeded the amount estimated, and did not object.

In Admiralty. Action in personam against the owners of a vessel to recover a balance due for repairs.

Arthur D. Foster, John F. Lewis, and Horace L. Cheyney, for libelants.

Matthew Dittman and Henry R. Edmunds, for respondents.

McPHERSON, District Judge. One aspect of the controversy concerning the libelants' bill for repairs has already been heard by this court and by the circuit court of appeals, namely, whether, under the facts in proof, a maritime lien existed enforceable against the vessel. The Havana (C. C.) 87 Fed. 487; Id., 35 C. C. A. 148, 92 Fed. 1007. This question having been answered in the negative, the present action in personam is brought to charge the owners individually. For present purposes it may be assumed that the facts found by the court in the previous suit are still open to controversy. The point need not be decided, for the testimony laid before me in this proceeding has proved them again, and I accordingly adopt the language of Judge Butler as expressing my own findings now:

"The suit is for $3,513, a balance due for repairs. The work was done at Baltimore, costing $16,000. The home port of the vessel was Philadelphia, the owners being Patrick Dempsey and Henry Hess, who reside here; the former having four-fifths, and the latter one. Dempsey, as managing owner, ordered and superintended the repairs. Mr. Woodall sought the work for his company, and came to Philadelphia to obtain it. At that time it was supposed $5,500 would cover the cost. The vessel was subsequently taken to the libelants' place at Baltimore, and the work commenced in pursuance of arrangements made here. It was afterwards found that much more must be done than had originally been contemplated, and a much larger bill be incurred. On the completion of the work, notes (of Dempsey) were given for the $3,513 unpaid, and the vessel was delivered to the owners."

In addition to these facts, I find also that, while Hess did not expressly authorize Dempsey to make the contract for repairs, he knew that repairs were necessary; that the contract had been made; that the boat was to be taken, and had been taken, to Baltimore; and that the repairs were proceeding in that city, and were much more extensive than was at first expected. It is also true that, hav-

ing this information, he made no objection to the work. The reason for his failure to object will be stated in a few moments. Woodall was not called as a witness, and it does not directly appear whether he knew that Hess was a part-owner when the contract was made; but he was chargeable with such knowledge, for the bill of sale was properly recorded on the day when Hess acquired his interest. The libelants dealt with Dempsey alone, and there is no evidence to show that they took any action, or made any expenditure, on the credit of Hess.

In my opinion, the case turns on the power of Dempsey, considered merely as a managing owner, to bind Hess by the contract for repairs. Upon this subject the decision in Spedden v. Koenig, 24 C. C. A. 189, 78 Fed. 504, relied on by the respondents, seems to be much in point. The syllabus of the case states correctly the rule applied by the court:

"In the home port, where all the owners reside, the managing owner, though registered as such at the custom house, cannot, merely by virtue of that relation, order supplies, and bind his co-owners to a personal liability therefor."

This rule controls the present dispute, unless there is sufficient ground for distinguishing the two cases in the fact (already referred to) that Hess knew that repairs were being made, and did not object. In my opinion, this circumstance, in the light of the other facts in proof, is not sufficient. Ordinarily, perhaps, consent might fairly be inferred from knowledge and failure to object; but in the case now being considered the inference would not be properly drawn for the reason now to be stated. It appears clearly that Hess paid $6,000 for his one-fifth interest in the boat before the repairs were begun, and when her value was probably not more than $12,000 or $13,000. This apparently disproportionate price is explained by, and corroborates, his testimony to the effect that Dempsey was to bear all the cost of repairing, and that the repairs would amount to $5,000 or $6,000. The purchase price paid by Hess thus appears to have included about $3,000 to be used in repairing the vessel. In my opinion, the agreement was as he declares,—that Dempsey was to pay all the cost of putting the boat in order,—and, if such an agreement existed, it explains his acquiescence in all that was done, for it was then of no consequence to him how extensively the boat might be repaired, nor how much the cost might be. I can find no evidence of authority, express or implied, on the part of Hess, permitting Dempsey to pledge his credit for these repairs.

Neither does the evidence bear out the allegation that Hess ratified the contract by paying money thereon. I agree that, if such a payment had been proved, this would be an important circumstance; but I am satisfied that the advances to Dempsey, upon which reliance is placed, were made by the firm of which Hess was a member, and not by him personally, and were for purposes having no connection with the repairing of the vessel.

A decree may be entered dismissing the libel, with costs, as to the defendant Hess.