## FIELDER et al. v. BAY CONST. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. April 1, 1925.)

No. 4492.

1. Maritime liens ⊂⊃42—Agreement that wages of crew of dredge paid for owner should be repaid out of earnings of dredge held not to waive lien against dredge.

Though maritime lien is waived by accepting credit of owner of vessel, agreement that wages of crew of dredge belonging to subcontractor, which were paid by contractor, should be repaid out of earnings of dredge, did not waive contractor's lien on dredge for wages paid.

2. Subrogation ⊂⊃23(7)—Contractor advancing wages of crew of dredge belonging to its subcontractor held not volunteer.

Bridge contractor, which advanced wages of crew of dredge belonging to subcontractor in order to carry on work under contract, was not mere volunteer and was entitled to be subrogated to crew's lien against dredge.

Appeal from the District Court of the United States for the Southern District of Florida; Lake Jones, Judge.

Libel by W. M. Fielder and another, copartners as Fielder & Mitchell, and others, against the dredge Florida, owned by the Peninsular Dredging Company, in which the Bay Construction Company intervened. Decree for intervener, and libelant appeals. Affirmed.

T. M. Shackleford, Jr., of Tampa, Fla. (W. M. Taliaferro, of Tampa, Fla., on the brief), for appellants.

T. Paine Kelly, of Tampa, Fla., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. The dredge Florida, owned by the Peninsular Dredging Company, was libeled by appellants for materials, repairs and supplies. The Bay Construction Company, appellee, intervened, and alleged that it had advanced to the dredging company the sum of $6,500, to be used in paying the wages of the dredge's crew, and that such sum was actually so used. Appellants, answering appellee's libel, admitted that certain advances to the dredging company had been made, but denied that they amounted to as much as was claimed by appellee; and averred that such advances, whatever they amounted to, were to be paid back out of the future earnings of the dredge.

The evidence shows that appellee advanced to the dredging company $6,500, of which the sum of $5,465.10 was paid to the crew of the dredge under the following circumstances: Appellee had a contract to construct the Gandy Bridge across Tampa Bay, and it let a contract for certain dredging to the Seaboard Dredging Company, which in turn let a contract for some of the dredging to the Peninsular Dredging Company. The last-named company, finding itself unable either to pay its crew or the claims of appellants for materials, repairs, and supplies, requested appellee to advance the money for the crew, and agreed to make repayment out of the earnings of the dredge.

The dredge was sold, but the purchase price was insufficient to satisfy in full the claims of all the libelants. The District Court entered a decree for the payment to appellee of the full amount furnished by it and received by the crew, and for the payment pro rata of the claims of appellants out of the balance derived from the sale.

There is a suggestion that appellee failed to prove that there was any balance due it; but as the answers only denied the amount of the advances, and did not aver that whatever amount had been advanced had been repaid, no issue was raised as to the balance due.

[1] It is insisted that appellee never acquired a lien on the dredge, inasmuch as it agreed that the amounts paid out by it on account of the crew's wages should be repaid out of the earnings of the dredge. The only value a dredge has lies in its earnings, and we are of the opinion that one who relies upon the earnings of a dredge relies upon the dredge itself, notwithstanding a contrary ruling in The Jennie Middleton (D. C.) 94 F. 683. In the Income Tax Cases (Pollock v. Farmers' Loan & Trust Co.) 157 U. S. 429, at page 580, 15 S. Ct. 673, 689, 39 L. Ed. 759, it is said: "As according to the feudal law, the whole beneficial interest in the land consisted in the right to take the rents and profits, the general rule has always been, in the language of Coke, that 'if a man seized of land in fee by his deed granteth to an-

other the profits of those lands, to have and to hold to him and his heirs, and maketh livery secundum formam chartæ the whole land itself doth pass. For what is the land but the profits thereof?' Co. Lit. 45. And that a devise of the rents and profits or of the income of lands passes the land itself both at law and in equity." The same reasoning is as applicable to the earnings of a dredge boat as it is to rents derived from land. One who has a lien recognized in admiralty waives it by accepting the credit of the owner. But reliance upon the earnings of a vessel shows conclusively that the lien is not waived, and that the creditor is unwilling to accept the liability of its owner.

[2] It is also argued that appellee was a mere volunteer; but clearly it was not. It acted for its own self-protection in carrying on the work for which it was responsible under its contract, and at the request of the debtor. 5 Pomeroy's Equity Jurisprudence (2d Ed.) §§ 2344, 2346, 2347.

Appellee became entitled by subrogation to the crew's lien, which admittedly was superior to the liens held by appellants.

The decree is affirmed.