**In the Matter of VANCOR STEAMSHIP CORPORATION, Bankrupt.**

**Bankruptcy No. 77 B 204.**

United States Bankruptcy Court, S. D. New York.

Jan. 16, 1981.

Hahn, Hessen, Margolis & Ryan, New York City, for trustee.

Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg, Great Neck, N.Y., for claimant, Newport News Shipbuilding & Dry Dock Company.

Costello & Shea, New York City, for creditors, Tilden & Plimsoll.

Donald F. Mooney, New York City, for Strachan Shipping Co., Marine Maintenance Co. and Marine Maintenance of Texas, Inc.

Crowell, Rouse & Varian, New York City, for William H. Swan & Sons.

Wikler, Gottlieb, Taylor & Howard, New York City, for Kansas claimants and J. Stanley Co., Inc.

## MEMORANDUM AND ORDER

JOHN J. GALGAY, Bankruptcy Judge.

Daniel J. Devenay, as trustee in bankruptcy of Vancor Steamship Corp. (Vancor) moves for authorization to distribute the net proceeds of the March 9, 1978 sale of the T.E. Vantage Horizon (Horizon) to certain maritime lienors. The only obstacle to the trustee's plan is a claim of Newport News Shipbuilding and Dry Dock Company, Inc. (Newport News) of a maritime lien of

$240,839.55 against this fund. The trustee moves to expunge this claim and Newport News objects on several grounds.

For the reasons more fully stated below, after review of the transcript of a hearing held on December 19, 1980, of the underlying documentation and the relevant admiralty law, this Court grants both of the trustee's motions.

The facts underlying the present controversy are relatively simple and clear. It is the ramifications of those events which create this dispute.

On September 22, 1975 the vessel S.S. Vantage Defender, owned by National Transport Corporation, (National) was assigned to the Newport News Shipyard for repairs. A letter of the same date from the director of ship repair sales to C.P. Corletta as president of National acknowledged arrival of the Defender at the shipyard and outlined the terms and conditions of payment. On October 27, 1975 the payment terms were modified by a written agreement between Newport News and Vancor, National and Vantage Steamship Corporation, (Vantage) "jointly and severally," through their mutual president, C.P. Corletta.

On January 31, 1977, Vancor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act. On March 3, 1977 Newport News filed its proof of claim asserting a maritime lien in the Vancor estate for work performed on the Defender, an asset of the separate National estate. As no plan of arrangement was confirmed, Vancor was adjudged a bankrupt on December 6, 1977. Newport News duly filed a proof of claim for the same debt in the present bankruptcy proceeding on February 24, 1978. On March 9, 1978 the Horizon was sold pursuant to an order of this Court, free and clear of liens with provision that such liens would attach to the proceeds.

Newport News claims that it has a valid lien against these proceeds as a maritime lienor based on the "joint and several" language in the October 27 amendment of payment terms. As Newport News contends that C.P. Corletta was president of both Vancor and National, both the Horizon, an asset of Vancor, and the Defender, the ship actually repaired and an asset of National, were to be considered as security for the credit extended. Newport News asserts that as it relied on the credit of the Horizon in contracting to perform work on the Defender, it has a maritime lien against the Horizon fund. Additionally, Newport News claims that both the trustee and the Creditors' Committee have acknowledged the validity of Newport News' maritime lien and that they are therefore estopped from contesting the claim now.

Both the trustee and the Creditors' Committee deny ever "allowing" that Newport News had a valid maritime lien against the Horizon fund. The Creditors' Committee joins in the trustee's application to expunge this claim.

The maritime lien was a creature of general admiralty law rooted in a recognition of the precarious position of those who supply goods or services to vessels which sail away before the bills are paid. But as at common law a maritime lien arose without the need for any documentation or notice, there was also a maritime policy discouraging the classification of claims as liens. As stated over a century ago,

[t]his privilege or lien, though adhering to the vessel, is a secret one; it may operate to the prejudice of general creditors and purchasers without notice; it is therefore "*stricti juris*," and cannot be extended by construction, analogy or inference.

*Vanderwater v. Mills*, 19 How. 82, 89, 60 U.S. 82, 89, 15 L.Ed. 554 (1857). This proposition remains as vital today as it was then. *See In re Riffe Petroleum Company*, 601 F.2d 1385 (10th Cir. 1979); *Fathom Expeditions, Inc. v. M/T Gavrion*, 402 F.Supp. 390, 397 (MD Fla.1975). As aptly summarized,

[a]dmiralty law has long ago ceased to create new liens. The only liens recognized today are those created by statute and those historically recognized in maritime law. There are no liens by analogy, and maritime liens ... cannot be be conferred on the theory of unjust enrichment or subrogation.

*In re Admiralty Lines, Ltd.*, 280 F.Supp. 601, 604 (ED La. 1968), *aff'd per curiam*, 410 F.2d 398 (5th Cir. 1969).

On June 23, 1910 Congress enacted the Federal Maritime Lien Act, 46 U.S.C. §§ 971–975 in an effort to both extend and unify the protections afforded to a creditor by a maritime lien. It is in light of that statute, as amended, that this Court must evaluate Newport News' claim. In relevant part 46 U.S.C. § 971 provides that

> any person furnishing repairs, supplies * * * or other necessaries, to any vessel * * * upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

█ It is undisputed that Newport News supplied repairs to a vessel, the Defender. The issue is whether this action in conjunction with the October 27 amendment of payment terms agreement gives rise to a maritime lien against another vessel. Based on a reading of the statute and the cases interpreting it, this Court must conclude that no maritime lien arose against the Horizon.

In discussing the changes which the statute made in maritime law, the Court of Appeals for the First Circuit concluded that

> [t]he statute of 1910 has not, in our opinion, made *proof that the supplies for which a maritime lien is claimed were furnished directly to the particular vessel* by the materialman any less necessary than before, nor does it afford any ground for attaching any meaning other than that previously recognized to the expression "furnished to a vessel". (Emphasis added).

*The Walter Adams*, 253 F. 20, 26 (1st Cir. 1918), *aff'd sub nom. Piedmont & Georges Creek Coal Co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97 (1920) (hereafter, *Piedmont*).

Newport News concedes that it supplied no services to the Horizon, but contends that the "joint and several" language in the October 27 agreement is sufficient to show that the parties intended a lien to attach to the ships of all three companies. No express grant of a lien exists anywhere within the October 27 agreement. Justice Brandeis clearly set out the rules to be followed for assessing *in rem* liability of the ship for goods or services furnished under a contract.

> For while *one vessel of a fleet cannot be made liable under the statute for supplies furnished to the others*, even if the supplies are furnished to all upon orders of the owner under a single contract, *each vessel so receiving supplies may be made liable for the supplies furnished to it*. The difficulty which, under general maritime law, would have blocked recovery by the Coal Company is solely that it did not furnish coal to the vessels upon which it asserts a maritime lien; and there is nothing in the Act of June 23, 1910 which removes that obstacle.

*Piedmont*, 254 U.S. 1, 10, 41 S.Ct. at 3 & 4 (1920).

Newport News faces that same obstacle since it did not repair the Horizon, and has not presented any evidence which can remove the burden imposed by the statute. Cases cited by Newport News relating to the presumptions that work done on a ship is done on the credit of the ship, *Crustacean Transport Corp. v. Atlanta Trading Corp.*, 369 F.2d 656 (5th Cir. 1966), or that reliance on the earnings of a vessel is not a waiver of a maritime lien, *Fielder v. Bay Construction Co.*, 5 F.2d 227 (5th Cir. 1925), simply do not support Newport News' claim here. The cases rely on a proposition that does not apply in the present case—that work or supplies were furnished to the ship against which the creditor asserts the lien.

Alternatively, Newport News claims that both the trustee and the Creditors' Committee have recognized the validity of the maritime lien and they are therefore estopped from contesting the claim at this time. The Court finds that, based on the provisions of the Bankruptcy Act and Rules, this contention is meritless.

■ Rule 214 of the Rules of Bankruptcy Procedure clearly describes the role of the Creditors' Committee. The committee can consult with the trustee on the administration of the estate and can make recommendations to the trustee. The Creditors' Committee does not have the power to "allow" claims or to bind the trustee in his investigation of the validity of claims. For a discussion of the duties of the Creditors' Committee, see *Bohack Corp. v. Gulf & Western Industries, Inc.*, 607 F.2d 258 (2d Cir. 1979). See also Levy, "Creditors' Committees and their Responsibilities," 74 Comm.L.J. 355 (1969); Walsh, "The Creation, Rights, Duties and Compensation of Creditors' Committees under Chapter X and XI of the Bankruptcy Act." 40 Brook L.Rev. 34 (1973).

■ Section 47 of the Bankruptcy Act outlines the duties of a trustee. Rule 306(a) of the Rules of Bankruptcy Procedure specifically requires the trustee to examine proofs of claim and to object to the allowance of improper claims. Jeffrey Schwartz of Hahn, Hessen, Margolis & Ryan, as attorneys for the trustee, both in sworn affidavit and in open court has assured this Court that he has thoroughly investigated the Newport News claim and has, for the past two years, advised Newport News that its claim should be withdrawn. Newport News has not produced any evidence which proves to this Court that the trustee has validated the maritime lien or that the trustee has in any way misled Newport News to its detriment.

Since the maritime lien is *"stricti juris"*, and Newport News has failed to satisfy the statutory requirements, or prove that such a lien was granted in any other manner, the trustee's motion to expunge the maritime lien claim of Newport News is hereby granted.

As no other opposition was heard on December 19, and as the maritime lienors have waited more than two years for payment, the trustee's motion for authorization to distribute the Horizon Fund pursuant to the schedule contained in the application is hereby granted.

It is so ordered.