## MEMORANDUM DECISIONS.

### THE AMERICA.

### THE NIAGARA.

(Circuit Court of Appeals, Second Circuit. April 4, 1899.)

#### Nos. 133, 134.

MARITIME LIENS.

Appeals from the District Court of the United States for the Eastern District of New York.

These causes come here upon appeals from decrees of the district court, Eastern district of New York, dismissing the libels, which were filed to recover wharfage from the America for the period from December 3, 1890. to May 20, 1891, and from the Niagara for the period from March 27, 1891, to July 31, 1891. 86 Fed. 785. The district judge dismissed the libels, on the ground that no maritime lien for wharfage arose against the vessels while withdrawn from navigation.

F. D. Sturges, for appellants.

Geo. M. Van Hoesen, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The brief of counsel for libelants (appellants) opens with this statement: "With regard to the America, the evidence shows substantially that she was a vessel engaged in towing on the Hudson river; that she was laid up at libelants' wharf, under an arrangement with her agent, during the winter months, awaiting the opening of navigation in the spring, when she was to be generally overhauled, and would resume her occupation. The case of the Niagara is somewhat different, as she went to libelants' wharf in the spring." Inasmuch as the berths were occupied under "an arrangement" between libelants and the agent of the boats, it should first be ascertained what that arrangement was. The boats in question and others belonged to Schuy-

ler's Steamboat Company (formerly Line), which had for years been accustomed to lay its vessels up for the winter at libelants' wharves, and to make such other use of the wharves as occasion required. During the period in question here, as on previous occasions, some of the boats were laid up next to the wharf, and the others outside of the ones first berthed. There were four berths next the wharf, and at times as many as four boats, one inside and three outside, occupied the same berth. The agent of the company testified that the arrangement with the owner of the wharf was that they were to pay "five dollars a day for each boat lying next to the wharf, nothing for any outside boat lying outside of the boats lying next to the wharf"; that in prior years the bills were rendered in bulk at the end of the season, after the boats had all left there, and were "against each large steamboat,—that is, the steamboat lying next to the dock,"—and that no charge was made upon the boats that lay outside. The libelant Robinson denied that any such arrangement was made as to inside and outside boats. Were this all the testimony, it might be difficult to reach a conclusion. But Egan, libelants' clerk who had charge of their wharves and kept the books, testifies that he understood that the company was to pay five dollars for each berth occupied. The book containing the account of the wharfage of these boats shows that, contrary to his custom in respect to other boats, he made no entry of tonnage, no entry of the charge for the wharfage (save for the first month, which he subsequently erased under direction), and that he apparently rendered one bill for each berth, however many boats were stored at it. We are satisfied that the arrangement for the season of 1890–91 was the same as in prior years, viz. that the boat lying next to the dock should pay five dollars a day, and that claimants might lay up boats outside of her without further charge. Whatever lien there might be for wharfage, therefore, would attach only to the boat against which wharfage was to be charged, and not against the outside boats. The evidence shows that neither of the boats libeled in these suits at any time during the period in controversy occupied an inside berth. Egan, who had charge of libelants' wharves, testified that the America, during the time she was there, occupied berth No. 2, and was outside all the time, and that when the Niagara came there she first occupied berth No. 3, outside, and then removed for the rest of the time to berth No. 1, outside. The record book corroborates his testimony. It would appear then that, under the arrangement, no charge for wharfage was to be made against either of these boats, and therefore no lien attached. The conclusion we have reached as to the facts renders it unnecessary to discuss the questions of law which were argued upon the appeals. The decrees of the district court are affirmed, with costs.