THE JAMES T. FURBER.

(District Court, D. Maine. April 25, 1904.)

No. 98.

1. ADMIRALTY JURISDICTION—SUBJECT-MATTER OF SUIT—STATE STATUTE CREATING LIENS.

A state statute giving a lien on domestic vessels in certain cases cannot enlarge the admiralty jurisdiction of the federal courts, which depends on whether the subject-matter of the suit is maritime in its nature.

2. SAME—MARITIME CONTRACTS—LEASE OF WHARF.

A lease of space at a wharf for use by a vessel at a fixed annual rent is a lease of real estate, and not a maritime contract on which a suit in admiralty can be maintained for the collection of the rent, since it has not necessarily any connection with navigation or the commerce of the seas.

In Admiralty. Suit in rem to recover rent for wharf.

James C. Fox, for libelant.

Benjamin Thompson, for claimant.

HALE, District Judge. This is a libel in rem, filed in this court on the 19th day of September, 1903. It is brought by the libelant, a corporation, the owner of Long Wharf, against the steamer James T. Furber, for alleged wharfage. The third article of the libel alleges that on May 30, 1902, Edward A. Baker, as master of the steamship James T. Furber, made and executed a contract with the libelant for the use of a landing on Long Wharf; also for wharf room for the erection of a waiting room on said wharf; and agreed to pay for the same the sum of $200 a year as rent. Said article further alleges that the libelee has continued to occupy said wharf up to the time of the filing of the libel, and that the accrued rent amounts to $250. By a seventh article, added by amendment, the libel further alleges that at the time

¶ 1. Maritime liens under state statutes, see The Anaces, 34 C. C. A. 565.
¶ 2. See Admiralty, vol. 1, Cent. Dig. § 141.

of furnishing said wharfage or landing and wharf room the steamship James T. Furber was a domestic vessel, and that a lien exists thereon as security for the libelant's claim. The libelant introduces in evidence a written agreement or lease, which is as follows:

(Lease, Common Form.)

This Indenture, Made the thirtieth day of May in the year of our Lord one thousand nine hundred and two,

Witnesseth, That the Proprietors of Portland Long Wharf of Portland, Maine, do hereby lease, demise and let unto Freeport and Portland Steamboat Co. a landing for their steamer James T. Furber, above the landing of the Brunswick and Portland Steamboat Company, also wharf room for the erection of a waiting room or shelter opposite the landing, but not so as to obstruct free passage to and from the said steamer landing below. Said steamer to have the landing as above when running and free dockage at the wharf when not running.

To hold for the term of one year from the first day of June in the year one thousand nine hundred and two, yielding and paying therefor the rent of Two Hundred Dollars.

And said Lessee do promise to pay the said rent in four payments viz. Fifty Dollars on July 15, 1902. Fifty Dollars on August 1/02, Fifty Dollars on August 15/02, and Fifty Dollars on Sept. 1/02, and to quit and deliver up the premises to the Lessor, or their attorney, peaceably and quietly at the end of the term aforesaid, in as good order and condition,—reasonable use and wearing thereof, or inevitable accident, excepted,—as the same are, or may be put into by the said Lessor, and to pay no taxes duly assessed thereon during the term, and for such further time as the Lessee may hold the same, and not make or suffer any waste thereof; and that he will not assign or underlet the premises or any part thereof, without the consent of the Lessor in writing, on the back of this Lease. And the Lessor may enter to view and make improvements, and to expel the Lessee if they shall fail to pay the rent aforesaid, whether said rent be demanded or not, or if they shall make or suffer any strip or waste thereof, or shall fail to quit and surrender the premises to the Lessor at the end of said term, in manner aforesaid, or shall violate any of the covenants in this Lease by said Lessee to be performed.

And the premises shall not be occupied, during the said term, for any purpose usually denominated extra-hazardous, as to fire, by Insurance Companies.

In Witness Whereof The parties have hereunto interchangeably set their hands and seals, the day and year first above written.

Edward A. Baker.      [Seal.]

Signed, Sealed and Delivered      Proprietors of Portland Long Wharf.
in Presence of      By Daniel Chase, Clerk.   [Seal.]
Frederick E. Berry.

The testimony shows that the James T. Furber was a small steamer, used exclusively in Casco Bay, and that at the time of making the lease she was in winter quarters at Merrill's Wharf, and had not been to Long Wharf; that she was then owned by some outside parties, not concerned in making the lease; that she was purchased on June 25, 1902, by the parties who had taken the lease of the libelant's wharf, and was taken to Long Wharf sometime between June 25 and June 28, 1902, and that she later began to run between Portland and South Freeport as a passenger and freight steamer; that some time in the following July the parties having the lease erected a small building for a waiting room and freight shed in connection with the business in which the steamer was engaged; that the steamer continued to run on her route until August 28, 1902, when she was hauled off on account of a breakdown, and did not resume her trips again that year; that on September

6, the steamer was sold by the parties operating her to Charles H Baker, who, on October 27, 1902, sold her to his wife, Etta R. Baker, the present owner; that the steamer remained at Long Wharf during the winter of 1902 and until April 18, 1903, when the present owner put her in commission, and ran her on his own account, carrying passengers to the forts in Portland Harbor; that the steamer continued landing at Long Wharf from April 18, 1903, to June 7, 1903, when, owing to the inability to get in and out of the dock, and the odors arising from the dock, she found wharfage elsewhere; that the lessee under the lease continued in possession of the leased premises until the filing of the libel, and that the building and a boiler, gangway, signs, and other property are still upon that part of the wharf covered by the lease; that, after the original lease expired by limitation, the lessee continued to hold over, and up to the time of the filing of the libel was still in the enjoyment of the premises leased as a tenant at will. It appears also that during the time the steamer landed at Long Wharf during the season of 1903 she occupied the berth covered by the lease.

The question which lies at the threshold of the case is, does the suit involve such a "maritime contract" as to give the court jurisdiction? Chapter 287, p. 255, of the Laws of 1889, now found in the Revised Statutes of the State of Maine, c. 93, § 7, reads as follows:

"All domestic vessels shall be subject to a lien to any part owner or other person to secure the payment of debts contracted and advances made for labor and materials necessary for their repair, provisions, stores, and other supplies necessary for their employment, and for the use of a wharf, dry dock, or marine railway, provided, that such lien shall in no event continue for a longer period than two years from the time when the debt was contracted or advances made."

It will be seen that the state law above quoted gives a lien "for the use of a wharf, dry dock, or marine railway." In the above enumeration the Legislature evidently intended to embrace and group certain maritime matters over which it created a lien upon domestic vessels. By the term "use of a wharf" it is evident that nothing more was intended than "wharfage," which distinctly and obviously relates to the navigation, business, or commerce of the sea, and has always been regarded as among the usual and necessary port charges of a vessel. "Wharfage" is the use of a wharf furnished in the ordinary course of navigation. A contract relating to "wharfage," as understood in the laws and usages of maritime affairs, is clearly a maritime contract. But there is a distinct difference between a claim for "wharfage" and a claim for "rent of a wharf." Under such a lease as in the case at bar the rent is payable, even though the vessel which is the subject of the lease should never come near the wharf, and should never require "wharfage" or "the use of a wharf." The contract, in the case at bar, relates to real estate, and arises out of the relation of landlord and tenant. The lease, which we have quoted, is in form and substance a lease of real estate. It does not present a "maritime contract," and cannot be enforced by the admiralty court. The intention and the effect of the state statute can be only to provide a remedy under a contract which is distinctly and wholly "maritime." In The H. E. Willard, 53 Fed. 599, in this district, Judge Webb said:

"That State Legislatures cannot restrict or extend the admiralty jurisdiction exclusively vested in the federal courts has been often decided, and is conclusively settled. It follows, necessarily, that a lien given by a state statute is not a test of jurisdiction. If it were, a State Legislature might, at pleasure, modify the jurisdiction of courts of admiralty by creating or abrogating liens not given by the maritime law. The distinction between cases in which the cause of action is itself within the admiralty jurisdiction and cases in which the admiralty, independently of the local law, has no jurisdiction, must not be forgotten or neglected."

The case was affirmed by Mr. Justice Gray, Circuit Justice, and Judge Putnam, Circuit Judge. Mr. Justice Gray, speaking for the Circuit Court, said (52 Fed. 389):

"The admiralty jurisdiction is conferred on the courts of the United States by the Constitution, and cannot be enlarged or restricted by the Legislature of a state. When a right maritime in its nature has been created by the local law, the admiralty courts of the United States may doubtless enforce that right according to their own rules of procedure. * * * But no state legislation can bring within the jurisdiction of those courts a subject not maritime in its nature."

In Boon v. The Hornet, Fed. Cas. No. 1,640, Judge Hopkinson, speaking for the court, said:

"A lien given by a state law may be enforced by a suit in rem in the admiralty. But it must be such a suit as the admiralty can entertain; in other words, in cases where the contract and service are maritime, or of the admiralty and maritime jurisdiction, although they are not such as would authorize a proceeding in rem in the admiralty, because there was no lien by them, yet when the state law supplies this deficiency, and gives a lien, a court of admiralty will enforce it. This is not enlarging the jurisdiction of the court, but the remedy of the party. It does not authorize a suit in the admiralty on the subject-matter not of admiralty jurisdiction, but only gives to the party a particular proceeding or remedy for the recovery of his debts."

In Plummer v. Webb, 4 Mason, 380, Fed. Cas. No. 11,233, Judge Story held "that, in order for a contract to be cognizable in admiralty it must be maritime in all its elements; that a contract of a special nature is not so cognizable merely because the consideration of the contract is maritime service. The whole contract must in its essence be maritime." In his opinion he says:

"I cannot see that the whole contract is here of a maritime nature. There are mixed up in it obligations ex contractu not necessarily maritime, and so far the contract is of a special nature. In cases of a mixed nature it is not a sufficient foundation for admiralty jurisdiction that there are involved some ingredients of a maritime nature. The substance of the whole contract must be maritime. * * * In such a mixed contract the whole would most appropriately belong to a court of common law. * * * I have no desire to strain the jurisdiction, so as to reach cases of an ambiguous character. Let them be left to the common forum of the litigant parties."

In The Advance (D. C.) 60 Fed. 766, Judge Brown said:

"In the present case the wharfage was not furnished in the ordinary course of navigation, nor upon the request or upon any contract of the master or any other officer of the ship. The evidence leaves no doubt that it was furnished in accordance with the terms of an unsigned memorandum of agreement, which had been previously drawn up upon negotiations between the libelant and the president of the steamship company some two years before. * * * The agreement provided for the payment of thirty dollars a day for the entire use of the Robert Pier for loading and discharging outward

and inward cargoes, and also for receiving and storing freight on the pier pending the arrival of any of the company's steamers. * * * During the occupancy of the ships it was 'optional to use the pier for any and all purposes which may be construed for the best interests of said steamship company or any of its patrons.' The agreement also gave the right 'to use, free of charge, for outward freight on the ground floor, one of the libelant's stores.' * * * The agreement, it is obvious, embraced considerably more than ordinary wharfage rights. The contract rates were very much in excess of the statutory rates, evidently in consideration of the storage and other facilities offered. The contract was, in fact, rather a contract for the exclusive use of the wharf and a partial use of the stores. * * * The price was not according to tonnage, like the usual wharfage rates. * * * I am constrained to find that there is no maritime lien in this case, (1) because whatever wharfage privileges were furnished were furnished under a contract which for a single price per day embraced other valuable considerations, the supply of which would give no lien upon the ship, and it is impossible to divide the price per day into different parts; (2) because the evidence indicates beyond doubt, as it seems to me, that the dealings were upon a personal contract between the two companies, which did not look to any credit of the ship, but only to the personal responsibility of the steamship company."

In 71 Fed. 987, 18 C. C. A. 404, Judge Wallace, in affirming the above decision, speaking for the Circuit Court of Appeals, made this finding:

"Where wharfage, together with the use of warehouses and piers for receiving and storing freight, were furnished to several vessels belonging to a domestic corporation for a single price per day under a contract with it, held that no lien arose, first, because the contract embraced other valuable considerations, the supply of which would give no lien against the ship, and which could not be separated from the wharfage proper; and, second, because the contract did not look to the credit of the ship, but only to the personal responsibility of the owner."

See, also, the elaborate opinion upon this subject of Chief Justice Alvey in Upper Steamboat Co. v. Blake, 2 App. D. C. 51.

It has been repeatedly decided that, to give the court jurisdiction over a contract as maritime, such contract must relate to the trade and business of the sea; it must be essentially and wholly maritime in its character; it must provide for maritime services, maritime transactions, or maritime casualties; and the provisions of a state statute, the intention of which is to give a party a remedy under his contract, cannot be enlarged by construction, analogy, or inference. The Paola (C. C.) 32 Fed. 174; The Steamship Yankee Blade, 19 How. 82, 15 L. Ed. 554; Scott v. The Morning Glory, Fed. Cas. No. 12,542; The Lottawanna, 21 Wall. 558, 22 L. Ed. 654; The Corsair, 145 U. S. 335, 12 Sup. Ct. 949, 36 L. Ed. 727. In Campbell v. H. Hackfeld & Co., 125 Fed. 696 (a case just published), the Court of Appeals in the Ninth Circuit decides "that the employé of a contracting stevedore has no remedy in the admiralty court against his principal for personal injuries, while discharging a vessel, through the alleged negligence of said contracting stevedore." In an elaborate opinion Judge Ross shows the tendency of the courts of this country in late cases to restrict admiralty jurisdiction. He says:

"The fundamental principle underlying all cases of tort, as well as contract, is that, to bring a case within the jurisdiction of a court of admiralty, maritime relations of some sort must exist, for the all-sufficient reason that the admiralty does not concern itself with non-maritime affairs."

In the case at bar the contract is a lease of real estate. The contract itself and the evidence relating to it do not present any question

relating to navigation or to the commerce of the seas. Such a contract as is presented in the case before us is not within the jurisdiction of an admiralty court.

Upon examination of the evidence in the case the court finds, too, that, if the case were within our jurisdiction, even then the clear intention of the parties as shown by the proofs indicates that the rent of the landing and wharf room was furnished solely upon the credit of the owner, and not upon the credit of the vessel. In the case of The Iris, 100 Fed. 104, 40 C. C. A. 301, Judge Putnam has construed a similar statute, and has held that it is not essential to the right of a lien that material or repairs should be furnished under a mutual understanding between the contracting parties that credit should be given to the vessel. He says:

"We are therefore to look at the terms of the statute, which contain no requirements beyond that the supplies and labor be furnished to a domestic vessel on the order of the owner, or of somebody representing him or employed by him."

He puts the statute in the same group "with the ordinary statutes giving liens on buildings, as to which it is clear that no evidence is required that either of the parties contemplated credit to the property." He says further, however:

"Of course, with reference to all property domestically located, whether buildings or vessels, circumstances may be such * * * as to show that the parties intended that credit should be given solely to the purchaser."

The case at bar comes within the exception just quoted which Judge Putnam makes in The Iris, and which he discusses in Cuddy v. Clement, 113 Fed. 454, 51 C. C. A. 288. In this case last cited he fully states the principle. In Prince v. Ogdensburg Transit Co. (C. C.) 107 Fed. 978, Judge Colt found that the conduct of the parties proved "that the dealings are not with the ship, or upon her credit, but upon the personal responsibility of the owners." In Ex parte Lewis, Fed. Cas. No. 8,310, Judge Story referred to a series of authorities which decided "that, where the parties enter into a personal contract for a specific sum, it is a discharge of the implied lien resulting by operation of law." Taylor v. The Commonwealth, Fed. Cas. No. 13,787; The J. M. Welsh, Fed. Cas. No. 7,327; N. Y. Mail Steamboat Co. v. The Baltic, Fed. Cas. No. 10,213.

In the case before us the lease itself and all the proofs tend to show that a personal credit was intended, and that a lien upon the vessel was not within the contemplation of the parties. The whole testimony is inconsistent with such a lien, either for the time covered by the lease or after the expiration of the lease; for the evidence leads the court to believe that the parties to the contract intended that credit should be given solely to the lessee named in the lease, whose agent Baker appears to have been in signing the contract. The steamer had not been at the libelant's wharf at the time the lease was made, and, indeed, had not been purchased, so far as the testimony shows; so that it is difficult to see how credit to the steamer could have been within the minds of the parties to the contract. It was the clear intention of the lessor to give credit to the owner of the steamer, and not to the steamer itself, under and during the life of the lease. No other intention is

proved as to the time after the expiration of the lease. The case is then brought within the exception referred to in The Iris, supra, and within the rule in Cuddy v. Clement, supra, and in The Electron, 74 Fed. 689, 21 C. C. A. 12. The court is, then, of the opinion that the libel must be dismissed. As the court finds, however, that it has no jurisdiction, it must order the dismissal of the libel without costs.

The decree may be entered. ·Libel dismissed, without costs.