THE JAMES T. FURBER.

(District Court, D. Maine.  December 2, 1907.)

No. 69.

1. MARITIME LIENS—RIGHT TO LIEN—CONSTRUCTION.

An admiralty lien is to be construed stricti juris, and cannot be extended by construction, analogy, or inference.

2. ADMIRALTY—JURISDICTION—MARITIME CONTRACT—LEASE OF WHARF.

A lease to a steamer and owners of the privilege of running a line of steamers from a wharf for a certain term for a gross rental, which gives the lessee the exclusive right to use the wharf during such term, and contains a covenant on his part to restore it in as good condition as when the lease went into effect, with certain exceptions, and which makes the rent payable, whether or not the wharf is used by the lessee, is not wholly a maritime contract, and cannot be enforced in a court of admiralty, nor can the lessor be permitted to waive the contract and enforce a lien on the vessel named for wharfage for such use as she in fact made of the wharf; the rights and remedies of the parties being governed by the contract as made.

[Ed. Note.—Jurisdiction as to matters of contract, see notes to The Richard Winslow, 18 C. C. A. 347; Board of Com'rs v. Howard, 27 C. C. A. 530.]

In Admiralty.  On petition in intervention.

Benj. Thompson, for libelant.

Enoch Foster, for intervener.

HALE, District Judge.  This cause comes before the court upon the intervening petition of Charles A. Plummer for wharfage.  The original libel was filed in September, 1907.  The steamer was sold in October by virtue of an interlocutory order of sale.  The net proceeds from the sale amount to $2,014.72, and have been paid into the registry of this court.  Since the order of sale, intervening petitions have been filed.  Among them is the petition of Charles A. Plummer.  Samuel Rosenberg, the holder of a mortgage on the steamer in the sum of $1,500, has filed a petition to intervene, and has also filed an answer denying that Plummer's intervention presents a lien on the steamer, or on the proceeds in the registry.  The intervention of Plummer is founded upon a written lease to the James T. Furber and owners.  The lease is as follows:

"This indenture, made the first day of June in the year of our Lord one thousand nine hundred and seven, witnesseth: That I, Charles A. Plummer, do hereby lease, demise and let unto the James T. Furber and owners the privilege of running line of steamers from the wharf owned by me at Peaks Island known as Jones Landing:

"To hold for the term of four months from the first day of June in the year one thousand nine hundred and seven, yielding and paying therefor the rent of three hundred and fifty dollars.  And the said lessee do covenant to pay the said rent in two payments as follows: Two hundred dollars the twentieth day of August and one hundred and fifty dollars the twentieth day of September—and to quit and deliver up the premises to the lessor or his attorney, peaceably and quietly, at the end of the aforesaid term, in as good order and condition, reasonable use and wearing thereof or inevitable accident excepted, as the same are or may be put into by the said lessor, and not make or suffer any waste thereof, and that he will not assign or underlet the

premises, or any part thereof, without the consent of the lessor in writing on the back of this lease. And the lessor may enter to view and make improvement, and to expel the lessee if he shall fail to pay the rent aforesaid, whether said rent be demanded or not, or if he shall make or suffer any strip or waste thereof, or shall fail to quit and surrender the premises to the lessor at the end of said term, in manner aforesaid, or shall violate any of the covenants in this lease by said lessee to be performed.

"All taxes assessed upon the premises are to be paid by ———.

"Water rates are to be paid by ———.

"And the premises shall not be occupied during the said term for any purpose usually denominated extrahazardous as to fire by insurance companies.

"In witness whereof the parties have hereunto interchangeably set their hands and seals the day and year first above written.

"Charles H. Baker.      [L. S.]
"Charles A. Plummer.   [L. S.]

"Signed, sealed, and delivered in presence of:
     "William M. Dyer.
     "C. H. Cooper."

The same steamer was before this court in the proceedings reported in 129 Fed. 808. The earlier case arose upon a similar form of lease. But in that lease certain rights in waiting rooms and other real estate interests were mingled with matters of a maritime character; and it was clear that the court could not decide the contract to be a maritime contract. The lease in the matter now before me presents a case where it is much more difficult to decide whether the contract is maritime or not. It purports to—

"lease, demise and let unto the James T. Furber and owners the privilege of running a line of steamers from the wharf owned by me at Peaks Island known as Jones Landing for a term of four months from the 1st day of June, 1907, yielding and paying the rent of $350. * * * And the said lessee does covenant to pay the said rent in two payments, as follows: $200 on the 20th day of August and $150 on the 20th day of September."

Is this a maritime contract, or one for the letting of real estate? The lease is to the steamer; but it grants the privilege of running a line of steamers for the four months constituting the season of 1907. It makes the rent payable whether the steamer used the wharf or not; and the testimony shows affirmatively that the intervener so understood its terms. The compensation was not based upon the size or tonnage of the steamer. Plummer testifies that it was based upon what he regarded as the value of the location, and also upon the fact that, the year before, the Casco Bay Steamboat Company paid a still larger sum for the same wharf accommodations, primarily for the purpose of excluding other steamers from landing at the wharf. It is sought, also, to impress the Furber with a lien for the privilege of running a line of steamers from the wharf, giving the lessee the privilege of running as many as he saw fit. The lease is in the common form of leases of real estate. From internal evidence of the lease itself, it appears to be the affirmative intention of the intervener to make its distinctive real estate covenants part of his contract. The intervention presents facts dissimilar to those involved in the former case of The Furber. But some of the authorities cited in that opinion apply to this matter. In stating the question in that case, this court said:

"It will be seen that the state law above quoted gives a lien 'for the use of a wharf, dry dock, or marine railway.' In the above enumeration the Legis-

lature evidently intended to embrace and group certain maritime matters over which it created a lien upon domestic vessels. By the term "use of a wharf" it is evident that nothing more was intended than 'wharfage,' which distinctly and obviously relates to the navigation, business, or commerce of the sea, and has always been regarded as among the usual and necessary port charges of a vessel. 'Wharfage' is the use of a wharf furnished in the ordinary course of navigation. A contract relating to 'wharfage,' as understood in the laws and usages of maritime affairs, is clearly a maritime contract. * * * It has been repeatedly decided that, to give the court jurisdiction over a contract as maritime, such contract must relate to the trade and business of the sea, it must be essentially and wholly maritime in its character, it must provide for maritime services, maritime transactions, or maritime casualties, and the provisions of a state statute, the intention of which is to give a party a remedy under his contract, cannot be enlarged by construction, analogy or inference. The Paoli (C. C.) 32 Fed. 174; The Steamship Yankee Blade, 19 How. 82, 15 L. Ed. 554; Scott v. The Morning Glory, Fed. Cas. No. 12,542; The Lottawanna, 21 Wall. 558, 22 L. Ed. 654; The Corsair, 145 U. S. 335, 12 Sup. Ct. 949, 36 L. Ed. 727."

Reference was also made to certain other authorities which bear upon this claim.

In The H. E. Willard (C. C.) 52 Fed. 389, in speaking for the Circuit Court, Mr. Justice Gray said:

"The admiralty jurisdiction is conferred on the courts of the United States by the Constitution, and cannot be enlarged or restricted by the Legislature of a state. When a right maritime in its nature has been created by the local law, the admiralty courts of the United States may doubtless enforce the right according to their own rules of procedure. * * * But no state legislation can bring within the jurisdiction of those courts a subject not maritime in its nature."

In Plummer v. Webb, 4 Mason, 380, Fed. Cas. No. 11,233, Judge Story held that, in order for a contract to be cognizable in admiralty, it must be maritime in all its elements; that a contract of a special nature is not so cognizable, merely because the consideration of the contract is maritime service. The whole contract must in its essence be maritime. In his opinion he says:

"I cannot see that the whole contract is here of a maritime nature. There are mixed up in it obligations ex contractu not necessarily maritime, and so far the contract is of a special nature. In cases of a mixed nature it is not a sufficient foundation for admiralty jurisdiction that there are involved some ingredients of a maritime nature. The substance of the whole contract must be maritime. * * * In such a mixed contract the whole would most appropriately belong to a court of common law. * * * I have no desire to strain the jurisdiction, so as to reach cases of an ambiguous character. Let them be left to the common forum of the litigant parties."

In The Advance (D. C.) 60 Fed. 766, Judge Addison Brown bases his decision in denying a lien partly upon the fact that the price was not in accordance with the tonnage of the vessel, as is usual in charges for wharfage.

In The Cimbria, 156 Fed. 378, Judge Dodge refers with approval to the earlier case of The Furber, and says:

"There was no mention of or reference to the Cimbria in the contract, nor to any other steamer. The lessee was free to bring to the wharf any vessel or vessels which it might be operating during the terms of the agreement. * * * It was contended that the unpaid balance of the agreed rent was due for wharfage, that it might be apportioned between the two boats which

used the wharf under the agreement, and that the Cimbria's part should constitute a lien upon her. * * * The whole rental was to be paid, whether any steamer used the wharf or not; and what was to be furnished in return for it included much besides wharfage, for the boat or boats which came there or had the right to come there. It would be wholly impossible to say what was due for wharfage, as distinct from what was due for the other accommodation to be furnished."

This intervention does not bring before the court so clear an instance of mingling real estate matters with maritime matters in the same contract as does the case in 129 Fed. 808. But, after a careful consideration of the lease now before me, I am constrained to decide that it does not present a wholly maritime contract, and cannot be enforced in a maritime court.

While it is in evidence that only the Furber used the wharf, and that this steamer used it for only part of the time, the contract gives the privilege to a line of steamers. On my first examination of the case I thought it possible to allow this intervener something, if he should amend his present petition, waive his contract, and ask payment simply for the time when the steamer actually landed at the wharf, and at the ordinary rates of wharfage. But it is evident that, in case such an amended petition should be made, the contract would be invoked by the other intervener, and must determine the rights of the parties in the case; for contracting parties must be judged by the contract which they have made, and not by what happened afterwards. The intervener would have no right to waive the parts of the contract which did not suit him. By waiving the contract the intervener does not smother it, or relieve himself from its results. If I should attempt to allow the whole or a portion of the contract to be waived, I should be guilty of straining the jurisdiction of the court, which Judge Story declined to do in Plummer v. Webb, supra. Judge Story's conclusion in that case was to leave such matters to the common forum of litigant parties. I must come to the same conclusion in the case at bar; for it is the general principle of the maritime law that an admiralty lien is to be construed stricti juris, and cannot be extended by construction, analogy or inference. The Yankee Blade, supra.

Certain general considerations are suggested by this intervention which seem to me to be of maritime interest. It is difficult to see how a contract fixing the rental of a wharf for the whole season, without regard to whether the steamer ran or not, and when in fact the steamer ran only a part of the term, is any more a maritime contract than the lease made the year before with another company for the privilege of landing and excluding others from landing, when no steamer ran at all. Aside from the distinctive real estate elements of the contract, it included a time during which it was known by the parties that the steamer could not land at the wharf. The rent was for a gross sum. It included wharfage facilities which might have been granted to other steamers, and from which the lessee of the wharf might have collected wharfage. This suggests the criticisms made upon a similar contract in Steamboat Company v. Blake, 2 App. Cas. 51, where Chief Justice Alvey said:

"Under such contract the rent is payable, though the vessel should never approach the wharf. * * * Why should a lease of a wharf that may be

for a long term, with annual rental reserved, and used as may be, with conditions and stipulations for repairs or rebuilding the same from time to time, be regarded as a maritime contract, and as such cognizable only in a court of admiralty? * * * The only contracts relating to wharves that are of a maritime character are those for wharfage, for wharf services rendered to vessels, and such claims are due to the lessee, and not to the lessor of the wharf."

Under the contract in the matter at bar, it is sought to impress a lien upon the steamer for the full rent, although she came to the wharf only for a portion of the term of the lease, and although other steamers might have the right to use the wharf with the lessee's permission by paying him wharfage. In other words, it placed in the hands of the lessee the right to permit or prohibit the use of the wharf by other passenger steamers. He could fix the rates at which such other passenger carriers could make use of the wharf. Under such circumstances it would be grossly inequitable and beyond the jurisdiction of the court to sustain the wharf owner's contention, and impress the steamer with a lien for the entire rent of the wharf for the season. It is perfectly evident, too, that the court cannot be invoked to enforce the covenants of a lease for quiet possession, and for returning the wharf in as good order and condition at the end of the term as at the beginning.

If such a lease as this for the exclusive accommodations at a wharf for a season can be sustained, then there is no reason in the law why a contract should not be sustained for a much longer term, and for an amount of rent equal to a large percentage of the value of the steamer, or even for its whole value. It is evident that an admiralty court cannot enforce the many distinct real estate covenants of the lease.

I conclude, then, that the petition of the intervener, Plummer, must be dismissed. Inasmuch as the intervention was made in good faith and in the full belief by the intervener in its validity, in view of all the circumstances of the case, the petition is dismissed without costs.