**YACHT CHARTERERS Inc.,**

v.

**DIESEL YACHT YANKEE CLIPPER.**

**BANKERS TRUST CO.**

v.

**KENFORD, Inc. et al.**

Nos. 4520, 4517.

United States District Court, Connecticut.

February 26, 1954.

Charles A. Van Hagen, Jr., New York City, Vincent P. Dooley, New Haven, Conn., for claimant.

McGuire & McGuire, New London, Conn., Mahar & Mason, New York City, for libellant.

SMITH, District Judge.

The case is before this court on the exceptions of the claimant, Kenford, Inc., to the libel of Yacht Charterers Inc. and the motion to sustain these exceptions. Claimant also moves that the libel of Yacht Charterers Inc. which was included in Adm. 4517, the consolidation of all actions filed against the yacht "Yankee Clipper", be eliminated from that consolidation, and thus that there be a resettling of the order of this court dated November 27, 1953.

The background of the case leading up to the present motion briefly is as follows: The Bankers Trust Company filed its libel on September 2, 1953 to foreclose a certain preferred mortgage on the yacht, "Yankee Clipper", in which libel process was obtained against the yacht as well as the claimant here, Kenford,

Inc., citing it to appear and answer. The yacht was attached by the Marshal, and exceptions were filed to the Bankers Trust libel by Kenford, Inc., which were overruled on November 16, 1953. On October 20, 1953 a motion was made by Yacht Charterers, Inc., as well as two other parties to intervene, which was denied on November 16, 1953 but without prejudice to motions that their independent libels pending in the court be consolidated with the Bankers Trust action. Such order was entered on November 27, 1953 resulting in the consolidation into Adm. 4517 of the four actions. Kenford, Inc. filed an answer to the Bankers Trust libel which the Court on November 30, 1953 held presented no triable issue of fact; Kenford never did answer the libel of Yacht Charterers or the other two consolidated libels.

An order was entered by Judge Hincks on November 30, 1953 which provided for the condemnation of the yacht and among other things ordered that "jurisdiction is reserved for future determination of the order of priorities of all claims and of the amounts of the claims of Yacht Charterers, Inc. * * * to be allowed out of the proceeds of sale." The parties are agreed that the amount stated in the claim of Yacht Charterers, Inc. is the correct amount, if the Court had jurisdiction over the claim.

Claimant's exceptions filed on February 5, 1954 were the first objections made to the libel of Yacht Charterers, Inc., which, on the merits, would appear to have been disposed of in the proceedings which culminated in the order of November 30, 1953 retaining jurisdiction of the court only for the priority and amount of libellant's claim. Claimant, however, contends that its exceptions here go to the lack of jurisdiction of this court by the allegation that Yacht Charterers' libel is based on a non-maritime contract. It claims that an attack on jurisdiction may be made at any time prior to final disposition. This would appear to be correct.

Claimant alleges that libellant's wharfage contract is clearly a non-maritime contract under the decision in The James T. Furber, D.C.1907, 157 F. 126. It points to the fourth ground of Yacht Charterers' libel, said ground reciting that "on or about May 27, 1953 the libellant and the owner and agent of the diesel yacht Yankee Clipper entered into an agreement whereby the libellant agreed to furnish to the said diesel yacht Yankee Clipper for the season of 1953 a berthing slip in consideration for which the said vessel became liable to pay to the libellant the sum of $644.00."

From this paragraph of the libel alone, however, it is impossible for this court to determine whether the wharfage contract involved here fits the particular fact situation of the Furber case. In that case, it was determined from all the evidence presented on a petition to intervene that a lease of a wharf to a steamship company which expressly provided for rental payment regardless of use and which included other clauses more analogous to real estate agreements than maritime, was not primarily a maritime contract. The court sustained an attack on the jurisdiction. On the statements contained in the motion before us, we cannot find that the contract in the case at bar falls under the Furber decision.

Whether or not a contract for wharfage is maritime is a question the answer to which varies with the facts. The result may depend on whether the ship has been taken out of navigation (non-maritime) or uses the wharf only for restoration after one voyage preparatory to another (maritime). The issue has been phrased in terms of whether the ship is using the wharf for the purpose of navigation or for the precise purpose of non-navigation, as, for instance, being laid up for the winter. It often takes a delicate balancing of the facts to reach a decision one way rather than the other. See Robinson on Admiralty (1939), p. 179.

On the basis of Yacht Charterers' libel this court had prima facie jurisdiction over the action and to call that jurisdiction in question is to assume the burden of showing by whatever proof is

necessary what prevents its existence or exercise, In re Muir, 1921, 254 U.S. 522, 532, 41 S.Ct. 185, 65 L.Ed. 383. This the claimant failed to do prior to the order of November 30, 1953. From the allegations of the libel, on which alone the claimant now relies, it is as likely as not that the use of the wharf contemplated was for navigation purposes.

The exceptions to the libel of Yacht Charterers, Inc. are overruled.