**ATLANTIC COAST LINE R. CO.**

v.

**UNITED STATES.**

No. 496–53.

United States Court of Claims.

May 4, 1954.

Robert R. Faulkner, Washington, D. C., Charles Cook Howell and Frank G. Kurka, Wilmington, N. C., on the brief, for plaintiff.

William T. Foley, Jr., Washington, D. C., Warren E. Burger, Asst. Atty. Gen., J. Frank Staley, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, and MADDEN, Judges.

LITTLETON, Judge.

In this suit plaintiff asserts a claim for wharfage in the amount of $44,750 against vessels owned by the United States which had been bareboat chartered to the East Coast Shipping Company, Inc., hereinafter referred to as the Shipping Company, and placed by that Company at a wharf owned by plaintiff at Jacksonville, Florida. The plaintiff had no ownership interest in the Shipping Company, but did own certain waterfront docks and mooring facilities at Jacksonville, Florida, where the Shipping Company moored the vessels in question.

The case is now before us on defendant's amended motion to dismiss predicated on the grounds that this court lacks jurisdiction over the subject matter

and that the petition fails to state a cause of action.[1]

Sometime prior to 1949, the defendant acting through the Navy Department inaugurated the development of its Banana River Naval Air Station on the east coast of Florida. Because the base was not served by rail facilities, the Navy on October 7, 1949, entered into a charter party with the East Coast Shipping Company under which the latter agreed to perform barge service between Jacksonville and the Banana River Base using Government-owned tugs and barges. As so used the vessels were in the Merchant Service. Under the charter defendant leased to the Shipping Company two tugs for a rental of $200 each per month and nine barges at the rate of $30 each per month. The charter, which gave each party a right of termination under certain conditions, was to be for a term of five years and was amended in June 1950, to include six additional barges.

During the furnishing of services by the Shipping Company under the charter, plaintiff's wharf at Jacksonville was used for the docking of the barges in transferring the cargo from railroad cars of plaintiff, the Atlantic Coast Line Railroad Company, to the vessels. No separate wharfage charges were levied by the plaintiff railroad during these operations since the charges were absorbed by the tariffs covering the rail shipments.

On October 4, 1950, because of financial losses, the Shipping Company ceased operations and notified the Navy that it was exercising its right under the charter to terminate it. This notification requested the Navy Department to furnish instructions as to where the Navy wanted the vessels redelivered because upon termination the Shipping Company was required to deliver the vessels to ports selected by the Navy.[2] The Navy replied rejecting the right of the Shipping Company to terminate the charter inasmuch as the company was then in default, the Shipping Company having gone into bankruptcy and its properties having passed into the hands of a trustee. However, in order to expedite matters, the Navy informed the company of its election under the terms of the charter to terminate which it was entitled to do upon default by the company. At the same time the Navy directed that certain of the barges be delivered to the Charleston Naval Shipyard and the remaining ones to the United States Naval Base, Green Cove Springs, Florida. The Shipping Company never delivered the barges as directed but left them moored at plaintiff's docks at Jacksonville, Florida.

On October 4, 1950, when the company ceased operations, 12 of the leased barges were moored at plaintiff's wharf and on January 10, 1951, three additional ones were added to the group. All remained at plaintiff's wharf until removed by the Navy on February 19 through 21, 1951. Before removing them, however, the Navy notified the Shipping Company that it was going to repossess the barges because the company had failed to redeliver the vessels as directed, as required under the charter and the written notice given.

Plaintiff, the Atlantic Coast Line Railroad Company, claims wharfage for the

1. Defendant's motion to dismiss as originally filed was based solely on the first mentioned grounds and was later amended to add the defense that the petition failed to state a cause of action. This amended motion as well as plaintiff's reply to it included matters to be considered outside the pleadings. Therefore, pursuant to Rules of Court of Claims rule 16(b), 28 U.S.C.A., we treat the present motion as we would a motion for summary judgment.

2. Article 17 of the charter provided as follows:

"Redelivery of Vessels.—On or before the expiration or promptly following the termination of this charter party, as the case may be, Charterer at its expense shall redeliver the Vessels in as good condition as when delivered to the Charterer, normal wear and tear excepted, to the locations shown on Schedule 1 hereof or to such other locations, within the Sixth Naval District, as may be designated by the Government, * * *. Upon completion by the Charterer of its obligations under this Article, the Government shall execute redelivery certificates covering each of the vessels so redelivered."

period October 4, 1950, through February 21, 1951, from the Government, during which time, first 12 and later 15, barges were moored at its wharf at Jacksonville.

The Government's initial defense is a jurisdictional one and rests on the contention that the plaintiff's claim, if any, is a maritime lien or contract, the exclusive remedy for which is a suit in a federal district court under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., 41 Stat. 525. Matson Navigation Co. v. United States, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336.

Plaintiff's position is that in order for the Suits in Admiralty Act to be applicable it is necessary that the cause of action be a maritime one arising from the use of the barges as merchant vessels. While admitting that during the operation of the barges under the charter they were employed as merchant vessels, plaintiff urges that their status as merchant vessels came to an end, and they became public vessels, when the Shipping Company ceased operations on October 4, 1950, and thereafter the status of the barges was that of public vessels. We cannot agree. The charters still governed. Plaintiff further contends that after that date the vessels must be considered as having been withdrawn from navigation with the result that any claim that might attach to them would be based on a nonmaritime cause of action outside the realm of admiralty. That is, a contract action. This, plaintiff asserts, was the status of the barges at the time that its right to wharfage accrued, rendering the Suits in Admiralty Act inapplicable. Plaintiff further contends that its cause of action arises under the Tucker Act, 28 U.S.C. § 1491, either as a claim for just compensation under the Fifth Amendment for the taking of its property or for damages for breach of a contract implied in fact under which defendant was obligated to reimburse plaintiff for the use of its wharf.

■ Plaintiff's efforts to recover must fail at the very outset. We are of the opinion that the plaintiff's cause of action, if any, arose as an incident to the employment of the barges as merchant vessels, and they remained merchant vessels until delivered as directed by the Navy, and any claim which plaintiff might have relative to them would be cognizable in the U. S. District Court under the Suits in Admiralty Act. Such a finding is sufficient to dispose of this case since once found to be a cause of action within that Act the remedy is one which is vested exclusively in the district courts. Field v. United States, 125 F. Supp. 190, 125 Ct.Cl. 559, certiorari denied 346 U.S. 922, 74 S.Ct. 308, and cases cited therein.

The Suits in Admiralty Act provides in part as follows:

"In cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the commencement of the action herein provided for, a libel in personam may be brought against the United States * * * *provided that such vessel is employed as a merchant vessel* * * *. Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found." [Emphasis supplied.] 46 U.S.C.A. § 742.

■ Claims for wharfage whether in the nature of a contract or lien have long been recognized as maritime causes of action within the admiralty jurisdiction. Ex parte Easton, 95 U.S. 68, 24 L.Ed. 373.

Plaintiff's argument is based on the premise that the stoppage of operations, due to bankruptcy, by the Shipping Company under the charter, coupled with the company's intention to no longer use the barges, was sufficient to convert the barges to public vessels. In so urging, we believe that plaintiff is placing much too narrow construction on the phrase "employed as a merchant vessel" as that

term is used in the act. The courts have not applied so narrow a test.

Faced with this identical question under the Suits in Admiralty Act, the Court in Shewan & Sons, Inc. v. United States, 266 U.S. 108 at page 112, 45 S. Ct. 45 at page 46, 69 L.Ed. 192, stated:

> "What, then, does the proviso mean? Are the words to be construed as if they read 'is being actively employed as a merchant vessel'? Such a construction is a narrow one, and not in accord with the equitable purpose of Congress. The important line between immunity from judicial seizure of government vessels under the act of 1916[3] was between public vessels and those engaged in merchant service. The mere laying up of a vessel engaged in the latter service would not change its character, unless the government did something affirmative to make it a public vessel."

■ This court in Morse Dry Dock Co. v. United States, 77 Ct.Cl. 57, applied the rule of the Shewan case. There the Government's withdrawal of the vessel from the public service and delivery of them under charter agreements to a shipping company was held to have been a sufficient act on the part of the Government to alter the character of the vessels from public service to merchant service even though the ships had not at the time of the accrual of the cause of action begun active service in the merchant fleet. We find no such comparable act on the part of either party here. Until the Navy completed repossession of the barges and, presumably put them to public use, the barges retained their merchant status. An effective termination by the Navy of the charter required redelivery of the vessels to the Navy, as directed. This was not done. The obligation sued on arose as an incident of the employment of the barges as merchant vessels. We do not regard the Suits in Admiralty Act as requiring active use as a merchant vessel at all times but only that the vessel have a commercial character when the cause of action arose. Eastern S. S. Lines v. United States, 1 Cir., 187 F.2d 956; Adams v. United States, D.C., 101 F.Supp. 956, affirmed 1 Cir., 201 F.2d 150.

Nor can we accept plaintiff's contention to the effect that after October 4, 1950, the barges must be regarded as having been withdrawn from navigation with the result that any claim relative to them would be a nonmaritime cause of action outside the admiralty jurisdiction. Cases cited by plaintiff in supporting this contention deal with either vessels under court attachment,[4] vessels which were found to be no longer adapted to further shipping needs,[5] vessels in storage during off-seasons[6] or a vessel's use of a wharf under a leasing contract whereby the owner was liable for the wharfage whether the vessel used the dock or not.[7] These cases present circumstances materially different from those confronting us here.

Plaintiff's claim for wharfage whether in the nature of a contract or lien is one which comes within the purview of the Suits in Admiralty Act, and the exclusive remedy under that Act is a suit in a federal district court. Defendant's amended motion to dismiss is granted and plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

---

3. Shipping Act of 1916, 39 Stat. 728. It was a Supreme Court decision under this Act, The Lake Monroe, 250 U.S. 246, 39 S.Ct. 460, 63 L.Ed. 962, permitting the attachment and seizure of Government-owned vessels used in the merchant fleet which led to the enactment of the Suits in Admiralty Act.

4. Murray v. Schwartz, 2 Cir., 175 F.2d 72; The Jack-O-Lantern, D.C., 282 F. 899;

The Poznan, 2 Cir., 9 F.2d 838, reversed 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955.

5. The General Lincoln, D.C., 24 F.2d 441; The Andrew J. Smith, D.C., 263 F. 1004.

6. The Murphy Tugs, D.C., 28 F. 429; The C. Vanderbilt, D.C., 86 F. 785, affirmed 2 Cir., 93 F. 986.

7. The James T. Furber, D.C., 129 F. 808.